Filed 9/5/18 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CLAUDIA POWELL, as Trustee, etc., | D072566, D073083 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00062405-PR-TR-CTL) |
| CHARLES M. TAGAMI, | AMENDED ORDER MODIFYING OPINION |
| Defendant and Appellant. | |
| | NO CHANGE IN JUDGMENT |

THE COURT:

On the court's own motion, pursuant to California Rules of Court, rule 8.264(c)(1), the court issued an order modifying the opinion on August 31, 2018, which contained an error. That order is amended, and the opinion is modified as follows:

1. On page 22, the third sentence, not the second sentence, of the first full paragraph is deleted. The paragraph, as modified, shall read as follows:

"Before filing the petition for the Third Account with the court, attorney Thompson provided Charles with a complete accounting, formatted as required by the Probate Code. Thompson also provided information regarding accounts for the Trust assets. Attorney Thompson sought clarification of what documentation Charles wanted, noting his experience with responding to specific inquiries, but not wholesale demands for documents."

2.     On page 22, footnote 5 is deleted.

3.     On page 23, the first sentence in the first full paragraph is deleted and the second sentence is modified to read as follows:

"Even after receiving documents, Charles filed a supplemental objection, which with additional exhibits totaled more than 200 pages, and stated he still wanted more documentation."

There is no change in the judgment.

MCCONNELL, P. J.

Copies to:  All parties

Filed 8/31/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CLAUDIA POWELL, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES M. TAGAMI,<br><br>    Defendant and Appellant. | D072566, D073083<br><br><br>(Super. Ct. No. 37-2013-00062405-PR-TR-CTL)<br><br>ORDER MODIFYING OPINION<br><br><br>NO CHANGE IN JUDGMENT |

THE COURT:

On the court's own motion, pursuant to California Rules of Court, rule 8.264(c)(1), the court modifies the opinion as follows:

4.    On page 22, the second sentence of the first full paragraph is deleted.  The following sentence is modified (as noted with underscoring) to read as follows:

"Attorney Thompson sought clarification of what documentation Charles wanted, noting his experience with responding to specific inquiries, but not wholesale demands for documents."

5.    On page 22, footnote 5 is deleted.

6.    On page 23, the first sentence in the first full paragraph is deleted and the second sentence is modified (as noted with underscoring) to read as follows:

"Even after receiving documents, Charles filed a supplemental objection,

which with additional exhibits totaled more than 200 pages, and stated he still wanted more documentation."

There is no change in the judgment.

McCONNELL, P. J.

Copies to: All parties

2

Filed 8/6/18; Certified for Publication 8/15/18 (order attached) (unmodified version)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CLAUDIA POWELL, as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHARLES M. TAGAMI, <br><br> Defendant and Appellant. | D072566, D073083 <br><br><br> (Super. Ct. No. 37-2013-00062405-PR-TR-CTL) |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Julia Craig Kelety, Judge. Affirmed.

Law Office of Bhashini Weerasinghe and Bhashini Weerasinghe for Defendant and Appellant.

Hughes & Pizzuto, Kent C. Thompson and Anne M. Rudolph for Plaintiff and Respondent.

INTRODUCTION

In these two consolidated appeals—D072566 (*Powell I*) and D073083 (*Powell II*)—Charles M. Tagami[1] challenges two probate orders. The first order settled, allowed, and approved the third and final predeath account and report of trustee (Third Account) and found Charles objected to the Third Account without reasonable cause and in bad faith, which justified an award of costs and fees pursuant to Probate Code section 17211, subdivision (a). Charles contends the probate court applied an incorrect local rule of the San Diego County Superior Court (hereafter, Local Rules) and there was not substantial evidence to support certain expenses. Charles also contends the court erred in finding he contested the Third Account without reasonable cause and in bad faith.[2]

The second order awarded $42,115.38 in attorney fees and costs pursuant to Probate Code section 17211, requiring Charles to pay these fees from his share of the Tagami Living Trust (the Trust), or personally if his share was inadequate. Charles contends the court should not have awarded fees for trustee Claudia Powell's personal

---

[1] Because the Tagami family members share a common surname, we use first or middle names after initial introduction to avoid confusion. No disrespect is intended.

[2] An order settling an account is appealable. (Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code, § 1300, subd. (b) [settling an account of a fiduciary].) An order "[f]ixing, authorizing, allowing, or directing payment of compensation or expenses of an attorney" is separately appealable. (Prob. Code, § 1300, subd. (e); *Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1594–1595; see *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450, fn. 5 [attorney whose petition for extraordinary compensation was denied waited until the estate was settled to appeal the denial; court held appeal was untimely under former Prob. Code § 7240, subd. (1) (now § 1300, subd. (e))].) Accordingly, we deny Powell's motion to dismiss *Powell I* appeal.

2

attorney and the fees awarded for Powell and the Trust attorneys were excessive, duplicative and unreasonable.

On our own motion, we consolidated the appeals for disposition.  We disagree with Charles's contentions in both appeals and, therefore, we affirm the orders.

BACKGROUND

A

Kenneth M. (Matazo) and Kazu Tagami were grantors of the Trust, which was established on November 10, 1997, and restated on January 3, 2012.  Matazo and Kazu had three children:  Kenneth K. Tagami, Barbara L. Tagami, and Charles.

A family dispute arose when the settlors suspected the prior trustee, who was Barbara's son, of embezzling funds from the Trust.  Matazo and Kazu removed the prior trustee and appointed professional fiduciary Powell as trustee on September 12, 2011.  Attorney Nancy Ewin drafted the restatement of the Trust, which was executed in January 2012.  Powell hired attorney Kent Thompson to represent her in her fiduciary capacity as trustee of the Trust.

A physician certified in March 2012 that Kazu was unable to make her own financial and medical decisions due to medical issues.  Matazo died in August 2012.  Kazu died almost three years later, in June 2015.

B

The court settled two prior accountings, the first for trust activity in the period of September 12, 2011, through September 30, 2012, and the second for trust activity in the

3

period of October 1, 2012, through September 30, 2014.  Powell gave Charles notice of the prior accountings.  Charles did not object.

In settling, allowing, and approving the first accounting, the court determined fees paid for attorney Thompson to give Powell advice regarding the proper administration and conduct of the trust were reasonable, necessary, and for the benefit of the Trust.  The court also found Powell performed all duties required of her during the accounting period and had been paid reasonable compensation, calculated quarterly, on a laddered fee schedule based upon the market value of the assets on hand at 1 percent of the first $1 million.  The court similarly settled, allowed, and approved the second account and report.

## C

### 1

Approximately a year after Kazu's death, Charles's attorney requested the third accounting "with supporting documentation" and stated Charles would not approve the accounting "until supporting documentation is received and reviewed."

Attorney Thompson provided the Third Account with an explanation of the accounts where the Trust assets were held.  Thompson stated neither statute nor Local Rules required delivery of bank statements or supporting documentation for an accounting.  Such a request was beyond the scope of Powell's accounting responsibility "as well as an unnecessary expenditure of time and money."  Thompson pointed out the court settled two prior accounts without objection.

4

After further communications, attorney Thompson asked for clarification of what documents Charles wanted. In his 41 years of practice representing professional fiduciaries, Thompson had never had a request for documentation after submission of a complete account formatted as required by the Probate Code, although he had responded to questions about specific receipts, distributions, or disbursements.

Charles's attorney demanded bills, statements and engagement letters with respect to expenses listed in the account including fees for Thompson's firm, fees for Powell, fees for attorney Ewin, and mediation fees. Charles's attorney stated failure to comply with the demands could be interpreted as bad faith. The attorney gave notice of Charles's objection to the Third Account and his intent to request attorney fees and surcharges against Powell.

Thompson denied Powell's actions could be interpreted as being in bad faith. He explained the Third Account was presented in conformity with the Probate Code and the two prior accounts, with the same categories, were approved without objection. Nevertheless, Thompson stated there were no engagement letters for Powell, attorney Ewin, or the mediation firm. He asserted the attorney-client privilege as to the engagement letter and billing statements for his firm. As to other billing statements requested, Thompson stated Powell would comply if the court authorized delivery of the requested statements.

2

On September 19, 2016, Powell filed her Third Account for the period of October 1, 2014, through June 20, 2015, the date of Kazu's death. The Third Account

5

showed all assets and distributions during the accounting period. This included a schedule listing itemized administrative expenses incurred during the accounting period. The property on hand at the close of the third accounting period had a market value of over $4 million and a carry value of more than $2.4 million. Charles received notice of the Third Account.

3

Charles filed his objection to the Third Account on February 2, 2017. Charles objected stating it miscalculated the number of days between October 1, 2014, and June 20, 2015. He stated he had insufficient information to judge Powell's compliance with the Probate Code for inventoried investments because she had not produced financial records. Charles objected to Powell's fees as well as to the attorney fees paid for attorney Thompson, attorney Ewin, and a mediation firm as excessive or inappropriate. He claimed Local Rules, rule 4.16.2(C)(4) required Powell to submit a declaration in support of fees. He complained about Powell's conduct as trustee throughout her service as trustee, including actions prior to and after the Third Account period at issue. Charles submitted 26 exhibits, which included documents and correspondence prior to and after the Third Account period.

4

Powell submitted a supplement to the Third Account stating administrative expenses during the accounting period totaled $29,482.19 in trustee fees and $14,658.28 in attorney fees. She stated these expenses were necessary, beneficial to the Trust, and

reasonable.  After an initial hearing, the court continued the matter to allow discovery about the Third Account.

Thereafter, attorney Thompson submitted a declaration responding to Charles's requests for documents.  Thompson lodged the engagement letter for his firm, bank statements reconciling the balances of the accounts at financial institutions as of the closing of the accounting, and redacted billing statements from his firm, attorney Ewin, and the mediator's firm.  He also submitted bank letters and statements of accounts.

The parties agreed the court would take the matter under submission.  The court set a briefing schedule for a supplemental objection and reply, but noted the parties could submit a stipulation if they reached an agreement.

5

Charles submitted a supplemental objection consisting of approximately 200 pages, including 38 additional exhibits.  Charles accused Powell of abusive billing practices and "double dipping" into the Trust by delegating what he claimed were routine administrative tasks to attorney Thompson, who charged a higher hourly rate.

Charles complained it was inappropriate for attorney Thompson to bill for reviewing communications on which he was copied if the subject matter was not a legal issue.  Charles pointed to communications between Powell, Charles, a caregiver, and a potential case manager regarding arranging for an assessment of Kazu at her home. Charles submitted a list of charges where he thought Thompson's fees should be reduced by $35 to $140 (one to three tenths of an hour at a rate of $350 per hour), or disallowed as either unnecessary or not legal services.  Charles claimed, "at the very least" $6,125 in

7

Thompson's fees were charged for unnecessary or nonlegal services. Charles extrapolated from this figure to claim there was a pattern of overbilling and estimated the first and second accounts paid more than $45,000 in inappropriate fees.

Charles challenged the fees charged by attorney Ewin for attending two family mediations during the accounting period involving issues regarding whether the Trust should pay for Charles's dental expenses and for Barbara's management of care for Kenneth. Charles claimed attorney Ewin was not Kazu's personal attorney and contended the mediations were unsuccessful and unnecessary. Charles also made personal attacks against Powell and Ewin alleging "cronyism" led Ewin to recommend Powell as the trustee. He also alleged Powell relied on Ewin's "willingness to rubber stamp" Powell's actions.

Charles claimed Powell encouraged abusive billing practices and withheld information. He characterized her administration of the Trust a "failure." He raised issues regarding Powell's administration of the Trust related to the first and second accounting periods. Charles accused Powell of sluggish distributions and of holding an unreasonably high reserve to maximize Powell's fee. He accused Powell of wasting trust funds by not producing "substantiating records before he approved the account" and by seeking judicial intervention.

Charles claimed Powell refused to honor Kazu's wishes to pay his dental bills. He also accused Powell of sabotaging the Trust by not following the terms of the Trust with respect to distribution of the family home and in appointing trustees for Kenneth's special needs trust. He accused Powell of being disloyal to the settlors of the Trust and

8

abandoning and breaching her duties as trustee, citing actions predating the current accounting.

## 6

Powell responded to Charles's objections both personally and in her capacity as trustee. Powell's individual response stated she "administered the Trust for the benefit of the surviving grantor, [Kazu], prudently managed trust assets, and made appropriate and reasonable distributions on [Kazu's] behalf and for her benefit" during the Third Account period. Powell "also attempted to facilitate the resolution of long-standing family disagreements." The response explained, "[g]iven the family dynamics involved, and often competing interests of those family members, significant communication was required to ensure all interested parties were kept informed."

Powell's compensation was based on the fee structure used since she became the trustee in September 2011 and approved without objection in the prior two accountings. Powell was responsible for managing not only the significant portfolio, but also for managing Kazu's residence, providing funds for Kazu's care, communicating with Charles and Barbara as co-agents under Kazu's health care power of attorney, filing fiduciary tax returns, and making distributions according to the terms of the Trust.

Powell did not believe a declaration was needed under the Local Rules because court approval is not required by statute for a trustee to receive compensation. Nevertheless, Thompson provided a declaration with billing records for his firm, attorney Ewin, and other documentation sought by Charles. Powell stated this was "a futile

9

attempt to satisfy [Charles's] expansive demands for further substantiation of various expenses," which Charles's counsel admitted to the court was a "fishing expedition."

Powell used attorney Thompson to advise her of her duties and responsibilities. This included advice about communications with Kazu's children and their attorneys. Powell reviewed the invoices provided by Thompson and determined they were reasonable and justified for the services provided.

Powell stated the purpose of the mediation was to resolve issues related to the care of Kazu and Kenneth and compensation to Barbara and Charles. Charles voluntarily attended. Powell stated it would not have been appropriate for her to act as the mediator given her capacity as trustee and agent under Kazu's financial power of attorney. Certain issues were resolved by the mediations. Charles's dental expenses were not.

The injury to Charles's mouth occurred before Powell became the trustee. Charles brought up the dental bills as an issue he wanted addressed in the family mediation. Kazu lacked the capacity to make her own financial or medical decisions. The other beneficiaries would not agree to the payment.

Powell disputed Charles's allegation that attorney Ewin "made" Powell trustee. The settlors interviewed and retained Powell after receiving a recommendation from Ewin.

Attorney Ewin attended the first mediation at her office with prior knowledge of all parties. As the attorney who drafted the Trust restatement, she attended to provide insight regarding Kazu's historical wishes since Kazu was no longer able to speak for herself.

10

Powell requested recovery of attorney fees and costs pursuant to Probate Code section 17211, subdivision (a), because of the need to respond to the surcharge allegations she deem unmeritorious. As trustee, she also noted many of the issues Charles complained of had been determined in the earlier accounts or involved events after the death of Kazu, which were outside the Third Account period. Powell stated Charles inaccurately or misleadingly recited facts regarding the Trust administration and took issue with actions previously authorized by the court in prior accountings. She also took issue with the "repeated, unwarranted, abusive[,] and inflammatory personal accusations against [Powell] and others."

7

Kenneth's personal attorney also submitted a declaration in response to Charles's objections and took issue with the personal allegations Charles made about Kenneth and his attorney. Kenneth did not object to the Third Account and found Charles's accusations so baseless and reckless, they amounted to willful and wanton harmful conduct.[3]

_____

3     Among the family disputes that postdate the Third Account is whether the language of the fiduciary deed recorded for the family home in June 2016 (recorded after the Third Account period) complied with the Trust language stating the family home was to be distributed to Charles "*on the condition that he allow* [*Kenneth*] *to reside in the property for the remainder of his lifetime without any payment for his residency while there*." After another attorney negotiated the language of the deed on behalf of Charles, his current attorney raised a dispute about whether the settlors intended Kenneth to have an ownership interest in the property for his life or a conditional right to occupy. Charles denied Kenneth a key to the home, required notice 24 hours before Kenneth could visit the home, and required Kenneth to seek Charles's approval before bringing someone with

11

D

The court overruled each of Charles's objections. With respect to attorney Thompson's fees, the court rejected Charles's contention some of the work could have been performed by Powell at a lower hourly rate. The court stated, "In a disputed case such as this, it is wise for a trustee to rely more extensively on counsel than might otherwise be necessary." The court also concluded the "higher fees were a result of Charles'[s] contentious approach to the [T]rust administration." The court similarly overruled objections to attorney Ewin's fees noting the court had approved fee payments to her in prior accounts for her ongoing work on behalf of the settlors. The court concluded the payment of fees for attorney Ewin to prepare for and attend the mediation was reasonable and appropriate and "there is nothing before the court that suggests any impropriety between Ms. Ewin and the [t]rustee." The court also overruled Charles's objections to Powell's fees and those of the mediator, concluding the fees were reasonable and Powell did not abuse her discretion in making disbursements.

Pursuant to Probate Code section 17211, subdivision (a), the court found Charles's contest was without reasonable cause and brought in bad faith and ordered Charles to pay the Powell's fees and attorney fees and costs incurred to defend the Third Account from Charles's share of the Trust or from Charles's personal funds if his share was inadequate. The court set a briefing schedule to determine the amount of fees.

---

him to the home. Kenneth believed Charles breached a condition precedent to holding title to the home, but stated the issue would be addressed in a future petition.

E

After considering the declaration of fees and costs submitted by Powell and Charles's objection thereto, the court concluded the requested fees were reasonable considering the issues presented and the work performed. The court ordered Charles to pay $30,080.38 to attorney Thompson's firm as the trust's attorneys, $5,997.50 to Powell's personal attorney, and $6,037.50 to Powell.

DISCUSSION

I

*Powell I*

Charles challenges the order settling the Third Account on several grounds. First, he claims the court erred in approving the Third Account without a declaration he contends was required by Local Rules, rule 4.16.2(C)(4). Second, he contends there was not substantial evidence to support the court's conclusion the fees paid to attorney Thompson, attorney Ewin, and the mediator were reasonable and appropriate. Finally, he contends the court erred in concluding his objection was without reasonable cause and in bad faith justifying an award of costs and fees under Probate Code section 17211, subdivision (a). We find no merit in these contentions.

A

Rule 4.16.2 of the Local Rules governs requests for fees and commissions in trusts, conservatorships, and guardianships. The court determined rule 4.16.2(C)(4) did not apply in this case because a declaration is not required by statute and fee approval

13

was not specifically sought in the Third Account.  (Local Rules, rule 4.16.2(D).)  We agree.

The Third Account did not seek an order approving a new fee disbursement. Rather the Third Account itemized disbursements already made, which included disbursements for fees paid to attorney Thompson, attorney Ewin, the mediator's firm, and Powell.  Powell's rate for compensation was previously settled and approved in prior accounts.

Even if Local Rules, rule 4.16.2 applied, the Probate Code governs "all accounts to be filed with the court" and "[e]xcept as specifically provided elsewhere in this code, or unless good cause is shown therefore, no information in addition to that required in this chapter need be in an account."  (Prob. Code, § 1060.)  Local rules may not narrow or conflict with statutory requirements.  (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351-1352.)  To the extent the rules require more than the statute's content requirements, the local rules may be viewed as optional.  (Ross & Cohen, Cal. Practice Guide:  Probate (The Rutter Group 2017) § 16:140.1.)

Under the statutory scheme, "An account shall include both a financial statement and a report of administration."  (Prob. Code, § 10900, subd. (a).)  The financial statement consists of a statutorily required summary (*id.*, § 1061) along with statutorily required supporting schedules.  (*Id.*, § 1062.)  The disbursement schedule must show "the nature or purpose of each item, the name of the payee, and the date thereof."  (*Id.*, § 1062, subd. (b).)

14

The Third Account complied with these statutory requirements. In addition, attorney Thompson submitted a declaration attaching billing statements for attorney fees sought for Thompson's firm, attorney Ewin, and the mediation firm. Therefore, the court had adequate information to exercise its discretion to ensure the fees paid were reasonable and for the benefit of the Trust. (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 270.)

B

Charles alleged broadly in his opening brief that there was not substantial evidence to support the court's findings Powell satisfied her fiduciary duties. He reiterated his complaints about Powell's conduct before and after the Third Account period. However, as clarified by his reply brief, he specifically challenges only the court's conclusion that fees paid to attorney Ewin, attorney Thompson, and the mediator were reasonable and appropriate.

Section 15.09 of the Trust permitted Powell to employ and reasonably compensate professionals, including attorneys, to advise or assist in the performance of her duties as trustee. This is consistent with the statutory powers conferred on trustees to hire persons, including attorneys, "to advise or assist the trustee in the performance of administrative duties" (Prob. Code, § 16247) and to pay "reasonable compensation of the trustee and of employees and agents of the trust, and other expenses incurred in the collection, care, administration, and protection of the trust." (Prob. Code, § 16243.)

On settlement of an account, " '[a]llowance of compensation rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in absence of a

15

manifest showing of abuse.' " (*Estate of Gump* (1991) 1 Cal.App.4th 582, 597.)

However, we review the factual findings on which the trial court based its exercise of

discretion under the substantial evidence standard. (See *Estate of Fain* (1999) 75

Cal.App.4th 973, 991–992; see also *Tire Distributors, Inc. v. Cobrae* (2005) 132

Cal.App.4th 538, 544 ["Even under [the abuse of discretion] standard, there is still a

substantial evidence component. We defer to the trial court's factual findings so long as

they are supported by substantial evidence, and determine whether, under those facts, the

court abused its discretion."].)

Under the deferential substantial evidence standard of review, findings of fact are

liberally construed to support the judgment or order and we consider the evidence in the

light most favorable to the prevailing party, drawing all reasonable inferences in support

of the findings. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "A single

witness's testimony may constitute substantial evidence to support a finding. [Citation.]

It is not our role as a reviewing court to reweigh the evidence or to assess witness

credibility. [Citation.] 'A judgment or order of a lower court is presumed to be correct

on appeal, and all intendments and presumptions are indulged in favor of its

correctness.' " (*Ibid.*)

1

Charles contends there was no substantial evidence to support the court's finding

that attorney Ewin's fees in the amount of $2,412 were reasonable and appropriate for

attending the mediations. The court, who had heard and settled the first two accounts,

found the settlors hired attorney Ewin when they were competent to assist with their

16

estate planning issues and the court had previously approved payment of attorney Ewin's fees in prior accounts for her "ongoing work for on their behalf."

Powell stated the purpose of both mediations was to resolve issues related to the care of Kenneth and Kazu as well as compensation of Barbara and Charles. The mediations did result in some agreements Powell was able to implement. Attorney Ewin, as the person who prepared the Trust restatement, could offer insight regarding Kazu's historical wishes since Kazu was now unable to speak for herself. All parties agreed to the attendance of attorney Ewin and the first mediation occurred at attorney Ewin's office. The issues in which attorney Ewin participated included not only Charles's request for payment of dental care, for which Ewin did some investigation by speaking to the former trustee, but also Barbara's request for compensation for time providing management and support services for Kenneth.

The court also found Charles presented no evidence of impropriety between attorney Ewin and Powell. Charles asserted Powell hired Ewin to "pretend" to represent Kazu or some other impropriety because another attorney, Richard Stewart, represented Kazu at some point historically. However, Ewin attended the mediation with agreement of the parties. Additionally, when Charles wanted Stewart to represent him at the second mediation, Powell exercised her authority as Kazu's agent under the financial power of attorney to terminate any attorney-client relationship that may have existed between Kazu and Stewart. Powell informed Stewart he could not represent Charles at the mediation due to a conflict of interest. The fact Stewart may have represented Kazu at some point does not diminish the value of Ewin's perspective at the mediation. There was substantial

17

evidence to support the court's factual findings regarding Ewin and it did not abuse its discretion in determining Powell's payment of Ewin's fees was reasonable and appropriate.

2

Charles objected to $6,125 out of approximately $14,000 in fees paid to attorney Thompson during the Third Account period. Charles claimed the charges were either unnecessary or not legal tasks, which should have been performed by Powell. Charles pointed to charges related to Thompson's review of communications between Powell and a nurse who evaluated Kazu's future care needs. The court rejected Charles's objections to Thompson's fees stating, "In a disputed case such as this, it is wise for a trustee to rely more extensively on counsel than might otherwise be necessary. The higher fees were a result of Charles' contentious approach to the trust administration."

Ongoing family disputes made the Trust administration difficult. Charles admitted the family dynamic was fractured. He sought payment of dental fees from the Trust, to which the other beneficiaries objected. Charles also sought compensation for his participation in Kazu's care whereas Barbara sought compensation for the care of Kenneth.

The bills to which Charles objected were communications that attorney Thompson reviewed related to Powell's arrangement for a nurse to evaluate and assess Kazu's future care needs. Since Barbara and Charles jointly held the power of attorney for Kazu's health care, disputes between Charles and Barbara regarding Kazu's care needed to be resolved before Powell could pay funds from the Trust implementing plans for Kazu's

18

care. The first category of discussion for the first mediation was the evaluator's recommendations for Kazu's personal care and her living situation. There was substantial evidence to support the court's factual finding that the nature of the case warranted Thompson's involvement throughout the process. The court did not abuse its discretion in determining Thompson's fees were reasonable.

3

Charles also contends there was not substantial evidence supporting the court's conclusion that the mediation expense ($3,960 for two mediation sessions) was "a reasonable expense to deal with the family issues that impacted the Trust." He specifically contends Powell should have used her own skills to resolve what he now claims were routine decisions regarding Kazu's care, her needs, and her desire to pay for things.

The record shows Powell outlined the first mediation agenda and explained the need for a mediator, "The presence of a mediator is to assist us in having an open discussion of sensitive issues, some of which will involve the Trust and some of which will not. Her role is to objectively facilitate, aid, and promote discussion, with a primary goal being to reduce the time needed and so achieve a net savings to the Trust." In her individual response, Powell explained it would have been inappropriate for her to conduct the mediation to resolve issues regarding Kazu's care needs as well as disputes among the family members regarding compensation to family members when her role was to act as the trustee and agent under Kazu's financial power of attorney responsible for disbursing trust funds for her care. Powell's goal was to "create an opportunity for

19

those issues to be resolved by the interested parties" so Powell could implement any agreement as the trustee. This position was reasonable to avoid any possible conflict of interest. Substantial evidence supported the court's finding the cost of the mediation was a reasonable expense. The court noted Charles participated in the mediation without objection and benefitted from presenting his views and, yet, did not offer to pay some of the mediation fees himself.[4]

C

Probate Code section 17211, subdivision (a), provides: "If a beneficiary contests the trustee's account and the court determines that the contest was without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the trustee and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. The amount awarded shall be a charge against any interest of the beneficiary in the trust. The contestant shall be personally liable for any amount that remains unsatisfied."

Reasonable cause is evaluated under an objective standard of whether any reasonable person would have tenably filed and maintained the objection. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 926–927 (*Uzyel*) [reasonable cause is ordinarily synonymous with the probable cause standard used for malicious prosecution].) If there

---

4      After the mediation, Powell attempted to assist Charles by making a gift of $14,000, the maximum annual gift allowed by the Trust, to each child. Additionally, Powell paid $5,000 to the attorneys who represented Charles and Barbara at the mediation.

20

is no dispute as to what facts were known at the time the contest was initiated or maintained, the existence of reasonable cause is a question of law. (*Id.* at p. 927.) Bad faith involves a subjective determination of the contesting party's state of mind—specifically, whether he or she acted with an improper purpose. (*Id.* at p. 926, fn. 47; see *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1249, 1263, (*Gemini*) [" ' "bad faith" means simply that the action or tactic is being pursued for an improper motive' "].) " 'A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence.' " (*Gemini*, at p. 1263.) We review a finding of bad faith under the deferential substantial evidence standard. (*Diaz-Barba v. Superior Court* (2015) 236 Cal.App.4th 1470, 1484.)

The probate court here advised the parties of Probate Code, section 17211, at each hearing. Ultimately, the court found Charles's contest was without reasonable cause and in bad faith. As to lack of reasonable cause, the court stated, "The court found all of the objections to be without merit. Some dealt with matters that have been settled by the court and not subject to re-litigation. Some dealt with matters that were inconsequential. Some were based on factually inaccurate assertions." The court also found the contest was taken in bad faith stating, "the court concludes that the only reasonable explanation for the unreasonable objections to the Third Account is that Charles intended to perpetuate family disputes; or to gain a personal advantage in distributions from the Trust; or both. Under any explanation, the court finds that such intention rises to the level of bad faith." We conclude the court did not err in making these findings.

21

Before filing the petition for the Third Account with the court, attorney Thompson provided Charles with a complete accounting, formatted as required by the Probate Code. Thompson also provided information regarding accounts for the Trust assets. He said production of bank statements or supporting documentation was not required by statute or Local Rules and was an unnecessary expenditure of time and money. Nevertheless, attorney Thompson sought clarification of what Charles wanted, noting his experience with responding to specific inquiries, but not wholesale demands for documents.

Instead of asking attorney Thompson for specific information about specific disbursements, Charles and his attorney repeatedly made broad demands for documents such as engagement agreements and monthly billing statements for all fees paid for attorneys, mediators, and Powell.[5]

In his original objection to the Third Account, Charles quibbled about a misstatement in the report regarding the number of days in the Third Account period and the identification of the beneficiary. He objected to all of Powell's trustee fees, Thompson's fees, Ewin's fees, and the mediation fees. He contended they were unsubstantiated, excessive, or inappropriate and demanded documentation of the disbursements. At some point, Charles's attorney admitted to the court his demand for documents was a "fishing expedition."

Even if there were some arguable basis for Charles's initial request for documents, he was not satisfied when documents were ultimately provided. Charles filed a

---

[5] From the record provided, it does not appear Charles sought a court order pursuant to the process described in Probate Code section 10901.

22

supplemental objection which, with additional exhibits, totaled more than 200 pages and stated he still wanted more documentation.

He complained about Thompson, as the trust's attorney, spending one or two tenths of an hour reviewing and assisting with communications between Powell and the beneficiaries regarding development of a care plan for Kazu. Charles accused Powell of liquidating trust assets to pay for Thompson's fees when the court previously authorized liquidation and diversification of stock assets.

Charles complained about fees charged by the mediator and attorney Ewin to participate in two mediations to help the beneficiaries resolve issues related to the care of Kazu, and other disputes involving trust distributions. Charles claimed the mediations were unnecessary even though he agreed to attend and obtained some benefit from them. The amount of the fees to which Charles objected were de minimus compared to the size of the estate and required significant time and expense for Powell to respond.

A substantial portion of the supplemental objections and supporting exhibits complained about Powell's actions and fees paid to attorney Thompson in the two prior accounts. Settlement of an account is conclusive to all interested parties and releases the trustee from future claims arising from those actions. (Prob. Code, § 7250; *Estate of WEAR* (1942) 20 Cal.2d 124, 127 [the "final settlement of an account is conclusive as to all matters necessarily involved therein against all persons interested in the estate, except those under a legal disability"]; *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 402 [an order settling an account is conclusive as to matters passed upon although some factual or legal arguments which could have been presented on the issues were not presented];

*Estate of Regli* (2004) 121 Cal.App.4th 878, 881 [a probate court's approval of an accounting is " 'conclusive as to [the administrator's] veracity and … [her] exercise of due care' "].)  The supplemental objection also raised irrelevant issues regarding actions in the postaccounting period, which were not yet before the court.

The objections also made unfounded inflammatory personal attacks on Powell and attorney Ewin.  Charles also attacked his siblings and their attorneys.  The vitriolic and contentious nature of Charles's pleadings and correspondence, his unmeritorious objections, and his personal attacks of Powell, the attorneys, and his siblings support the court's inferred finding of bad faith.

Under these circumstances, we conclude Charles's objections were made and maintained without reasonable cause and there was substantial evidence to support the court's finding the objections were brought in bad faith.  Therefore, the court properly determined Charles should pay the costs of the trustee and other expenses and costs of litigation, including attorney fees, pursuant to Probate Code section 17211, subdivision (a).

II

*Powell II*

In the second appeal Charles challenges the court's subsequent order awarding fees.  Charles contends the court should not have awarded fees for Powell's personal attorney and the fees awarded for Thompson and Powell were excessive, duplicative and unreasonable.  We disagree.

"We independently review any legal issue regarding the appropriate criteria for a fee award. But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised. [Citation.] In fashioning an equitable remedy, the trial court is in the best position to determine whether the criteria for a fee award have been met. We will not disturb its judgment on this issue unless we are convinced the court abused its discretion. [Citation.] A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis." (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.* (2010) 180 Cal.App.4th 1542, 1547–1548.)

Charles contends the court should not have awarded fees and costs for Powell's personal attorney because Probate Code section 17211, subdivision (a), requires the costs and fees to be "incurred to defend the account." Charles contends Powell's retention of a personal attorney to respond to the individual attacks made against her were for her benefit rather than for the benefit of the Trust. Charles is wrong. "While defense against those allegations may have benefited [Powell] personally by eliminating the possibility of individual liability, they also benefited the trust by eliminating charges raising serious questions about whether she had and could continue to administer the trust properly." (*Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 99.) In addition, "when a trust beneficiary instigates an unfounded proceeding against the trust in bad faith, a probate court has the equitable power to charge the reasonable and necessary fees incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust estate." (*Rudnick v. Rudnick* (2009) 179 Cal.App.4th 1328, 1335.) The court was well within its discretion to award Powell's individual attorney fees. (*Hollaway, supra,* at p. 100.)

25

Charles next contends the time spent and fees charged for Thompson's firm and for Powell were excessive, duplicative, and unreasonable. We disagree. The "spare-no-expense" strategy was employed by Charles in objecting to the Third Account, not Powell or the Trust attorneys. (*Donahue, supra,* 182 Cal.App.4th at p. 273.) The objection and supplemental objection submitted by Charles to the Third Account raised numerous unmeritorious issues to which the Trust and Powell were required to respond. Charles submitted voluminous exhibits, which were presented in a disorganized fashion. We note one entry for Powell's services was for "[p]reparation and delivery of history and time line as needed to allow counsel to isolate objections specific to the Third Account from those events occurring previously." In awarding the fees requested, the court stated, "The Trustee was obliged to file and defend the accounting as a result of [Charles's] actions, at considerable expense to the Trust. Where, as here all objections were devoid of merit, it is appropriate that the beneficiary who was the cause of such expense should bear that cost."

The court concluded the fees requested were reasonable in light of the issues presented and the work performed. " 'The "experienced trial judge is the best judge of the value of professional services rendered in [her] court, and while [her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) The court's evaluation of the value of the services rendered by Powell and attorney Thompson's firm were not clearly wrong. The court acted well within its discretion in awarding the fees and costs requested.

26

DISPOSITION

The orders are affirmed.  We deny Powell's request for attorney fees pursuant to Probate Code section 17211, subdivision (a).  However, Powell shall recover her costs on appeal.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


DATO, J.

27

Filed 8/15/18

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CLAUDIA POWELL, as Trustee, etc., | D072566, D073083 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00062405-PR-TR-CTL) |
| CHARLES M. TAGAMI, | |
| Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed August 6, 2018, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties