Filed 8/22/25  Estate of Sentoso CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| Estate of SENTOSO, MULYADI T.S. SENTOSO, Deceased. | B339687 |
| KEIKO HASEGAWA et al., | (Los Angeles County  Super. Ct. No. 20STPB02178) |
| Petitioners and Appellants, | |
| v. | |
| LISBETH SENTOSO, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jessica A. Uzcategui, Judge.  Affirmed.

Rodney Gould for Petitioners and Appellants.

Haryati T.S. Sentoso, in pro. per., for Respondent.

## INTRODUCTION

This appeal stems from a family dispute in the probate of the estate of Mulyadi T.S. Sentoso (Mulyadi[1]). Mulyadi's sister, Haryati Sentoso (Sentoso), raised claims against his estate, claiming Mulyadi executed a promissory note in her favor before he passed away. The administrators of the estate—Mulyadi's surviving spouse and his son—rejected the creditor claim. The dispute was ultimately resolved at mediation and the parties executed a settlement agreement fully resolving Haryati's claims against the estate. Haryati then brought a motion to enforce the agreement under Code of Civil Procedure section 664.6.[2] The trial court granted the motion, and the administrators of the estate now appeal, arguing the settlement agreement was procured by fraud and is contrary to the public interest. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

When Mulyadi passed away in February 2020, his surviving spouse, appellant Keiko Hasegawa (Hasegawa), and his son, appellant Philip Sentoso (Philip or, collectively with Hasegawa, appellants), were named the administrators of his estate.

On September 2, 2020, respondent Haryati filed a timely creditor claim against Mulyadi's estate, alleging Mulyadi executed a promissory note in 1995 under which he was to pay her $3 million, plus interest and attorney's fees. Appellants rejected Haryati's creditor claim.

---

[1]     As this case involves multiple family members who share a last name, we use first names where necessary for clarity. No disrespect is intended.

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise specified.

On March 3, 2021, Haryati filed a separate civil action against appellants as representatives of Mulyadi's estate. Haryati subsequently filed an amended complaint in October 2022, naming Hasegawa as a defendant in her individual capacity. Neither complaint is in the record on appeal. Still, it appears Haryati alleged at least one cause of action for breach of contract in addition to unspecified claims against Hasegawa in her individual capacity.

I.     *Mediation and Settlement*

On July 20, 2023, the parties participated in a mediation with Honorable Lesley C. Green (Ret.) and reached a global settlement on Haryati's claims in both the instant probate action and her separate civil suit. The parties' agreement was reduced to writing, which was executed by the parties and approved by their respective attorneys that same day. The settlement agreement specified that Mulyadi's estate would pay Haryati $450,000 and would enter into a stipulated judgment of $2,550,000 in Haryati's favor in the civil action. The agreement further provided that Haryati could enforce the stipulated judgment against Mulyadi's separate property or any community property that was not administered in the probate proceedings. In return, Haryati agreed to dismiss all claims asserted in her amended civil complaint, except her cause of action for breach of contract.

II.     *Petition for Settlement Approval*

On September 12, 2023, appellants filed a petition in probate court for an order approving the July 20 settlement agreement and release. In their petition, appellants represented that the settlement was "the result of extensive negotiations, conducted at arm's length, with the assistance of an

3

experienced mediator."  They also represented that they "believe[d] that the terms and conditions of the settlement agreement are fair and reasonable and to the advantage of the Estate.  The Settlement Agreement has fully resolved the dispute, and will allow [appellants] to complete the administration of the Estate."  Appellants stated that approval of the settlement would "also allow the parties to avoid the risk of continuing to litigate" Haryati's underlying civil action and that "the Settlement Agreement is clearly in the best interest of the estate."

The petition was accompanied by signed verifications from both appellants.  Their verifications each affirmed the content and representations contained in the petition under penalty of perjury.  The petition was set for hearing on November 29, 2023.

At the November 2023 hearing, Hasegawa appeared and stated that she wanted to withdraw her petition to approve the settlement.  The court denied her request but continued the hearing on the petition to May 9, 2024.  The court also authorized Haryati to file a motion to enforce the settlement agreement to be heard on that same date.  Appellants subsequently filed a written notice stating they were withdrawing their petition for approval of the settlement.

III.  *Motion to Enforce the Settlement*

On April 12, 2024, Haryati filed a motion to enforce the settlement agreement under section 664.6.  The motion was accompanied by a declaration from Haryati's counsel, Nicholas Everett (Everett).  Everett stated he was personally present for and participated in the mediation that led to the settlement agreement, which all parties signed.  According to

4

Everett, appellants were represented by counsel at the mediation who approved the form of the settlement agreement.

Appellants opposed Haryati's motion. As relevant on appeal, appellants argued there were grounds to rescind the settlement agreement under Civil Code section 1689, subdivision (b). Specifically, appellants alleged Haryati fraudulently induced them to settle the case by sending them "fraudulent documents" shortly before the mediation that allegedly supported her claims against Mulyadi's estate.

Appellants alternatively alleged that enforcing the settlement agreement would be against the public interest under section 1689, subdivision (b)(6). Appellants argued the public interest would be prejudiced by the settlement because (1) there were factual errors in the promissory note and Haryati's amended complaint, (2) the promissory note was notarized by an Indonesian Notary and not a notary authorized by the California Secretary of State's office, (3) the passport number listed for Mulyadi on certain documents presented by Haryati did not match his actual passport number, and (4) Haryati fabricated documents to induce appellants to settle the litigation.

Appellants' opposition was accompanied by a declaration from Hasegawa. In her declaration, Hasegawa claimed that her attorney received documents from Haryati "only two days prior to the private mediation," which "purported to be memorandums with a bank statement and a check that were allegedly faxed to and from [Mulyadi] in support of the existence of the Promissory Note." Hasegawa claimed the existence of these documents "ultimately made [her] sign the Settlement Agreement." She claimed she "was pressured to sign the Settlement Agreement under the assumption that the documents were true and authentic." However, at some unspecified time

5

after she signed the agreement, she claims to have discovered that the documents were "fraudulently created by Haryati." Hasegawa argued the documents must have been forged by Haryati because Mulyadi "did not read, write, or have any working knowledge of the English language (yet allegedly Mulyadi's memo is entirely in English), and the bank statements referenced in the documents are altered and not reconcilable with any other known bank statements."

Hasegawa's declaration attached a declaration from Mulyadi that was filed in other litigation in which he stated that: "My native language is Indonesian which I read, write and speak with ease. I also speak Mandarin Chinese to a lesser extent. English is a distant third language. I do not speak, read or write English very well. . . . For documents in English, I rely on persons familiar with English and Indonesian or Mandarin Chinese to explain the content. This Declaration was read to me twice in Mandarin Chinese, I asked a number of questions, made comments and reviewed revisions before I signed it."

On May 9, 2024, the trial court issued an order granting the motion to enforce the settlement agreement. The trial court rejected Hasegawa's claim that the settlement agreement was procured by fraud. The court noted Hasegawa's declaration was the only evidence of fraud presented in the opposition. The court determined that Hasegawa's "assertions of fraud are not supported by specific allegations showing when and how the Administrators became aware of the alleged fraud. In addition, the Administrators do not explain how the parties justifiably relied on those documents, when the evidence of their falsity is the fact that they were in English, which would have been apparent on the face of the documents. Similarly, the Administrators argue that the bank statements provided are

6

not in line with other existing records, but fail to specifically identify those records and when the discrepancies were discovered.  As such, the Court is not persuaded that the Settlement should be rescinded on the basis of fraud."

The court also rejected the argument that the settlement agreement ran contrary to the public interest.  "Here, the Administrators again argue based on the alleged fraudulent documents and other discrepancies the Administrators later discovered among the evidence supporting [Haryati]'s claim.  However, the Administrators have not met their burden to demonstrate fraud or prejudice to the public interest, and the Court is not persuaded that the Settlement should be rescinded on this basis."

IV.    *Appeal*

Appellants timely appealed the court's order granting the motion to enforce the settlement agreement.  On appeal, appellants contend the trial court erred in rejecting their request to rescind the settlement agreement for fraud or prejudice to the public interest under Civil Code section 1689, subdivisions (b)(1) and (b)(6).

**DISCUSSION**

I.    *Legal Standards*

Section 664.6 provides in pertinent part that, "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court . . . , for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement."  (§ 664.6.)  "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit."  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).)  "A

7

trial court, when ruling on a section 664.6 motion, acts as a trier of fact." (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889 (*Skulnick*).) A trial court "hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Weddington*, at p. 810.) Alternatively, the trial court may resolve a motion under section 664.6 "upon declarations alone." (*Skulnick,* at p. 889.) "If the court determines that the parties entered into an enforceable settlement, it should grant the motion and enter a formal judgment pursuant to the terms of the settlement." (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182.)

"Factual determinations made by a trial court on a section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence. [Citations.] Other rulings are reviewed de novo for errors of law. [Citation.]" (*Weddington, supra*, 60 Cal.App.4th at p. 815.) "Under the deferential substantial evidence standard of review, findings of fact are liberally construed to support the judgment or order and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 231.) When reviewing for substantial evidence, "'[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding." (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.) "[T]he testimony of a single witness, even a party, is sufficient to provide substantial evidence to support a factual finding." (*Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 171.)

"The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of

8

factfinding. 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) "In that role, the judge may reject any evidence as unworthy of credence, even uncontradicted testimony. [Citation.]" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 979 (*Falcone*).) In reviewing for substantial evidence, we do "not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court. [Citations.] The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589 (*Michael G.*).)

II.     *Substantial Evidence Supports the Trial Court's Ruling*

The trial court's determination that the parties entered into a binding settlement is supported by substantial evidence, specifically the verified representations of appellants in their petition to approve the settlement agreement as well as Everett's declaration submitted with Haryati's motion to enforce the settlement agreement. This sworn testimony, if credited, established (1) the terms of the settlement, (2) that the settlement was the result of an arm's length negotiation mediated by a retired judicial officer, and (3) the voluntary assent of all parties and the approval of all counsel. From this evidence, the trial court could conclude the parties entered into an enforceable settlement under section 664.6. (*Skulnick*, 2 Cal.App.4th at p. 889 [declarations alone are a sufficient basis to grant a motion under § 664.6].)

Appellants argue it was error for the trial court to conclude that the settlement agreement was an enforceable contract because they had grounds

9

upon which to rescind the contract under Civil Code section 1689. Civil Code section 1689 provides, in pertinent part: "(b) A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding . . . was . . . obtained through . . . fraud . . . exercised by or with the connivance of the party as to whom he rescinds. . . . [¶] (6) If the public interest will be prejudiced by permitting the contract to stand." We address appellants' claims of fraud and prejudice to the public interest separately.

1. *Fraud*

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington*, *supra*, 60 Cal.App.4th at p. 810.) As appellants were the ones seeking to rescind the contract for fraud, they bore the burden of proof to establish such fraud. (*Fraters Glass & Paint Co. v. Southwestern Const. Co.* (1930) 107 Cal.App. 1, 5 ["The burden is on one who relies upon fraud or mistake as grounds for the rescission or revision of an instrument to allege and prove the essential elements of the charge"]; accord *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 550; Evid. Code, § 500 ["a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"]; Evid. Code, § 520 ["The party claiming that a person is guilty of . . . wrongdoing has the burden of proof on that issue"].)

Here, Hasegawa's declaration was the only evidence put forth by appellants in support of their allegations of fraudulent inducement. The trial court found Hasegawa's testimony on this point was not credible, concluding that appellants did not carry their burden of proof to establish the settlement agreement was procured by fraud. In such situations, "'it is misleading to

10

characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" [Citation.]" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)

"Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found [the party]'s evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

Appellants' evidence was not so compelling as to require finding in their favor as a matter of law. As proof of fraud, appellants alleged that documents purporting to be memoranda authored by Mulyadi must have been fraudulently created by Haryati because they were written in English and Mulyadi could not read or write English. As the trial court pointed out, the fact that these documents were written in English would have been apparent from the face of the documents. On appeal, appellants do not

11

explain how they reasonably relied on these memoranda in settling the litigation if they knew Mulyadi could not read or write English.

We also note Hasegawa's claim that the memoranda were forged is belied by the very declaration from Mulyadi that Hasegawa attached to her declaration. Mulyadi's declaration is written in English. As he explained in the declaration, he was, in fact, able to read, speak, and write in English but could not do so "very well." Nonetheless, he was able to review and sign his English-language declaration because he had the declaration read and explained to him before signing. Hasegawa's own evidence therefore establishes that Mulyadi was fully capable of ratifying and executing documents written in English despite his limited familiarity with the English language. This significantly undermines Hasegawa's claim that the memoranda must have been forged because they were in English.

Appellants also claimed Haryati fraudulently induced them to settle the case because the bank statements referenced in the memoranda "are altered and not reconcilable with any other known bank statements." But appellants did not explain what alterations were purportedly made, how those alterations were material to Haryati's claims, or when these discrepancies were discovered. Nor did they offer any evidence showing those bank statements were irreconcilable with other records. On this showing, we agree with the trial court that appellants' allegations of fraud were not supported by specific allegations showing when and how they became aware of the alleged fraud.

These deficiencies in Hasegawa's declaration diminished both the weight and credibility of her testimony. The trial court was not obligated to credit Hasegawa's testimony, and on appeal we will not disturb the trial court's credibility determination or reweigh the evidence presented by

12

appellants. (*Falcone*, *supra*, 203 Cal.App.4th at p. 979; *Michael G.*, *supra*, 203 Cal.App.4th at p. 589.) We find no error by the trial court in rejecting appellants' claim of fraud under Civil Code section 1689, subdivision (b)(1).

### 2. *Public Interest*

"It is important to recognize there is a strong public policy favoring settling of disputes. [Citation.] 'We note that there is a well-established policy in the law to discourage litigation and favor settlement. Pretrial settlements are highly favored because they diminish the expense of litigation.' [Citation.] Additionally, 'Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions.' [Citation.] The power to void a contract should be exercised only where the case is free from doubt. [Citation.]" (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745–746, fn. omitted.) "Courts seek to interpret contracts in a manner that will render them '"lawful, operative, definite, reasonable, and capable of being carried into effect"' without violating the intent of the parties. [Citation.]" (*Id.* at p. 745.)

Appellants argue that enforcing the settlement agreement would prejudice the public interest because (1) there were factual errors in the promissory note and Haryati's first amended complaint, (2) the promissory note was notarized by an Indonesian Notary and not a notary authorized by the California Secretary of State's office, (3) the passport number listed for Mulyadi on certain documents presented by Haryati do not match his actual passport number, and (4) Haryati fabricated documents to induce appellants to settle the litigation.

Appellants offer no argument or authority showing that these assertions, even if assumed to be factually true, are sufficient to demonstrate

13

prejudice to the public interest such as to warrant rescission of the settlement agreement under Civil Code section 1689, subdivision (b)(6). "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority. [Citations.]" (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894–895; see also *People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 ["We need not consider . . . a perfunctory assertion unaccompanied by supporting argument"].) On this basis alone, we could affirm the trial court's ruling.

However, we decline to find such forfeiture here and instead reach the same conclusion on the merits of appellants' argument. We note that to the extent appellants attempt to use allegations of fraudulent documents to support their claim for rescission under Civil Code section 1689, subdivision (b)(6), their argument fails for the same reason as discussed above in the context of subdivision (b)(1).

We note the other three theories of prejudice to the public interest do not pertain to the settlement agreement itself, but rather the documents that Haryati relied on to support her claims against Mulyadi's estate. Appellants do not claim the settlement agreement itself contained illegal or unconscionable terms. Instead, appellants appear to argue that there were

14

weaknesses in Haryati's underlying claim, and it would be generally unfair to enforce the settlement agreement because Haryati may not have ultimately been able to prevail on her claim at trial. This argument is unavailing.

Nothing in the record suggests these purported weaknesses in Haryati's case were unknown to appellants at the time they entered into the settlement agreement. Appellants were free to use these alleged deficiencies and irregularities in Haryati's supporting documents to negotiate a lower settlement or they could have refused to settle entirely on the basis that they would prevail at trial. Appellants appear to have done so here, as Haryati abandoned her claim for interest under the promissory note in agreeing to the settlement. We also note that settlements are rarely admissions of fault or liability and are often compromises motivated by practical concerns such as the parties' respective assessments of the risks and costs of continued litigation.

This is precisely the case here. The parties' settlement agreement expressly states that: "[Appellants] deny all of the allegations of [Haryati]'s Complaint and the allegations of [Haryati]'s First Amended Complaint and are prepared to continue to litigate this matter. Nonetheless, to avoid potential risk going forward, [appellants] have agreed to settle the Action." Similarly, in their original petition to confirm the settlement agreement, appellants swore under penalty of perjury that the settlement was in the best interest of Mulyadi's estate because it would "allow the parties to avoid the risk of continuing to litigate" Haryati's claims.

On such facts, appellants' decision to settle this action despite the possibility that they could have prevailed on the merits in no way prejudices the public interest and instead is entirely consistent with "the strong public policy of this state to encourage the voluntary settlement of litigation."

15

(*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1359.)  We find no error in the trial court's decision to grant Haryati's motion to enforce the settlement agreement.

## DISPOSITION

The order is affirmed.  Haryati is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

We concur:


MORI, J.


TAMZARIAN, J.

16