Filed 11/17/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TREVOR JONES, Plaintiff and Respondent, v. PAUL GOODMAN et al., Defendants and Appellants. | D075907 (Super. Ct. No. 37-2016-00016836-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge. Affirmed.

Kuznetsky Law Group, Michael David Kuznetsky, Gregory M. Garrison, and Mark David Kesten, for Defendants and Appellants.

Murtaugh Treglia Stern & Deily, Michael James Murtaugh, R. Casey Hannegan, and Devin E. Murtaugh for Plaintiff and Respondent.

Trevor Jones contended he was entitled to a percentage of the successful Pura Vida bracelet business established with his former friends and colleagues Paul Goodman and Griffin Thall. He claimed the parties had formed a partnership regarding a bracelet business and sued Goodman and Thall (Defendants) seeking (among other things) a partnership buyout under

Corporations Code section 16701.[1]  Defendants denied Jones's claims and prevailed at trial.  After trial, Defendants sought to recover attorney fees pursuant to section 16701, which authorizes an equitable award of attorney and expert fees "against a party that the court finds acted arbitrarily, vexatiously, or not in good faith."  (§ 16701, subd. (i).)  The trial court denied Defendants' motion on two grounds:  (1) the motion was untimely under applicable rules (Cal. Rules of Court, rule 3.1702), and (2) on the merits, the court declined to find that Jones acted arbitrarily, vexatiously, or not in good faith.

Defendants appeal from the court's denial of their section 16701 fee motion.  They contest the court's sua sponte determination the motion was untimely, and they further challenge the court's refusal to find Jones acted arbitrarily, vexatiously, or not in good faith.  We reject Defendants' claims of error and affirm the order.

FACTS

Trevor Jones, Paul Goodman, and Griffin Thall were college friends turned entrepreneurs.  Jones and Thall owned and operated a website called OUTnSD, and Goodman and Thall owned and operated a bracelet company called Pura Vida.  Jones claimed that, in or around 2010, the three men agreed to an "equity swap," wherein Jones received five percent ownership in Pura Vida in exchange for five percent of OUTnSD.  According to Goodman and Thall, the men discussed Jones's proposal but did not agree to it.  OUTnSD went out of business in 2013, but Pura Vida grew into a successful business.

---

[1]    Unless otherwise specified, statutory citations are to the Corporations Code.

In May 2016, Jones sued Goodman, Thall, and Creative Genius, Inc. d/b/a Pura Vida Bracelets, and he subsequently dismissed Creative Genius Inc., d/b/a Pura Vida Bracelets from the lawsuit. In his operative amended complaint, Jones claimed the parties "agreed . . . to work together as partners in [two business] ventures" (OUTnSD and Pura Vida), the parties' agreement was memorialized in a written agreement, he was entitled to a five percent "partnership interest" in Pura Vida under the partnership agreement, and the parties' intent to form a partnership was "subsequently confirmed by [their] conduct" in working together to make both business ventures successful. Jones asserted claims for breach of the partnership agreement,[2] breach of fiduciary duties,[3] accounting, determination of partnership buyout under section 16701, and declaratory relief.[4] Jones asserted that Defendants breached the partnership agreement "by taking distributions from Pura Vida for themselves only, without informing [Jones] and to his exclusion." On his

---

[2] The elements of a cause of action for breach of a partnership agreement are: (1) the partnership agreement; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to plaintiff. (See *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 104.)

[3] The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. (See *Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1164.) "The fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care . . . ." (§ 16404, subd. (a).)

[4] Jones's causes of action for an accounting, determination of partnership buyout, and declaratory relief all represent relief requested in the event Jones prevailed on his substantive claims. At trial, Jones demanded five percent of the value of the bracelet business, which he valued at over $30 million.

breach of partnership agreement claim, Jones asserted he was "damaged in an amount equal to his share of the distributions taken by the Defendants."

Defendants denied all of Jones's allegations. Prior to trial, Defendants made an offer to compromise of over $300,000 under Code of Civil Procedure section 998. Jones declined the offer. Also prior to trial, Defendants moved for summary judgment but were unable to defeat Jones's claims. The parties participated in two rounds of mediation but were not successful in resolving their dispute. The case proceeded to a bench trial in August 2018.

At trial, Jones, Goodman, and Thall each testified, as did dueling business valuation experts. Jones testified that he, Thall, and Goodman had been friends when they attended college together. He and Thall worked together on an internet-based business they created called OUTnSD. When the three of them (and one other friend) traveled to Costa Rica together during the summer of 2010, Goodman and Thall came up with the idea for Pura Vida bracelets; Goodman and Thall arranged to purchase 100 bracelets to import and sell back home.

The three friends (who were also roommates at the time) discussed an equity swap proposal that would give Jones a small stake in Pura Vida and Goodman a small stake in OUTnSD. Jones said Goodman and Thall thought it was "an amazing idea" that would allow all three of them to participate in the two businesses together because, before the equity swap, only Thall was involved in both businesses. Jones wrote and emailed a proposed agreement. Jones testified the three men signed the agreement around February 2011 just before they made a second trip to Costa Rica, but backdated it to November 2010, and agreed to keep the arrangement a secret because another friend and Goodman's sister were also working on Pura Vida, but only as salaried employees.

4

Jones introduced as evidence an "Equity (or Equities) Exchange Proposal" agreement dated November 24, 2010, which purported to be signed by all three men. The agreement identifies the "[p]artners" and purpose of their agreement, including "new ideas, new perspective, . . . better operations," and the opportunity to "learn twice as much, diversifying our risk." (Capitalization omitted.) OUTnSD is referred to as "Company 1" and Pura Vida as "Company 2," and the parties set forth the anticipated benefits to each business and the expected contributions of the partners.[5] In the agreement, Jones gave Goodman a five percent "ownership" in OUTnSD and Goodman gave Jones a five percent "ownership" in Pura Vida. The agreement further provides that "[p]ayout is not necessary unless money is being taken or exchanged for whatever reason."

Jones testified that the three men (and another friend) then began working on a third venture together, Flex Watches. Jones focused efforts on Flex Watches, while Goodman and Thall focused on Pura Vida. Jones testified that Goodman had previously offered to swap his 16 percent interest in Flex Watches for Jones's five percent interest in Pura Vida, but Jones refused. Jones later bought out Goodman and Thall's interests in Flex Watches.

On cross-examination, Jones admitted he never invested any money into the Pura Vida business and never requested an accounting of Pura Vida's profits. He never discussed Pura Vida's tax liability with his purported partners or anyone else. There was no documentation to show that Pura Vida was a partnership. Jones never received stock certificates in "Pura Vida Bracelets" or Creative Genius, Inc. He also did not share five percent of

---

[5] Goodman and Jones would "[h]elp in business operations, bring new ideas to the table, [and] handle business operations."

his OUTnSD salary with Goodman. Jones explained that he understood the agreement to require the sharing of an "end-of-the-year-type profit, not salaries," but he acknowledged the terms "distribution" and "salary" were not in the written agreement.

Goodman and Thall denied signing the purported partnership agreement, but Thall acknowledged the signatures looked like his and Goodman's. Counsel tried to show that the signatures on the agreement did not match other, known signatures of the two men. Neither party presented a handwriting expert to testify.

Goodman testified that he recalled discussing the potential "equity swap" with Thall and Jones, but decided not to enter into the agreement after Thall told him that Jones "didn't really hold his weight in OUTnSD." Goodman did not think Jones would contribute positively to a partnership. He recalled telling Jones he was not interested in having Jones participate in Pura Vida and did not recall discussing the subject further after that.

Evidence showed that Pura Vida was the fictitious business name for a corporation called Creative Genius, Inc. Articles of incorporation were filed for Creative Genius, Inc. on or about September 21, 2010.[6] Goodman and Thall signed stock certificates for Creative Genius, Inc. on November 24, 2010, with the company's shares split evenly between the two men. Jones was never a stockholder in Creative Genius, Inc. Jones testified that he

---

[6] There was testimony regarding the incorporation date and the articles of incorporation were admitted as evidence during trial, but the exhibits were not transmitted to this court. We take judicial notice of the articles of incorporation for Creative Genius, Inc. from the California Secretary of State's website. (Evid. Code, § 452, subd. (c); *Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1484, fn. 12 [taking judicial notice of articles of incorporation filed with California Secretary of State on appellate court's own motion].)

knew Goodman and Thall "had a company called Creative Genius, Inc." However, Jones had no recollection of being told there was a company *incorporated to do business as Pura Vida* before they discussed and entered into their partnership agreement. The three friends frequently discussed their businesses, but not the "legal structure" for the businesses. Goodman testified that he did not recall discussing the incorporation of Creative Genius, Inc. with Jones. Thall testified that, in November 2010, Thall and Goodman went out of town to sign some papers to "finalize Creative Genius, Inc."; he believes "there was a mention" of this plan in Jones's presence, but there was no other time that he discussed the incorporation of Creative Genius, Inc. with Jones.

After trial, the court entered judgment in Defendants' favor and against Jones. The court found that Jones's claim that Pura Vida Bracelets was both a corporation and a partnership was "a legal impossibility," and based on the evidence before it, the company could not be both a partnership and a corporation at the same time. The court additionally found "there was no partnership." More specifically: "there was no evidence that the parties agreed to form a partnership," "there was no evidence that a partnership existed," and "there was no evidence that a partnership operated as a going concern, including no K-1s, no partnership formation documents, no balance sheets, and no profit and loss statements." The court further found that Jones failed to prove the signatures on the purported written partnership agreement belonged to Goodman and Thall, and failed to prove any purported partnership had monetary value to support his damages claim.[7]

---

[7] The court noted it "found Plaintiff's expert valuation of CGI as a partnership asset was unsupported by any facts or law."

After judgment was entered in Defendants' favor on October 12, 2018, Defendants served notice of entry of judgment on October 22, 2018.

On December 21, 2018, Defendants moved for attorney fees under section 16701, subdivision (i), on the ground that Jones had demanded a partnership buyout pursuant to that code section, and had done so "arbitrarily, vexatiously, and not in good faith," and, as such, equity supported a fee award. Defendants sought an award of $315,279.40 incurred for defense counsel and trial counsel.

On January 11, 2019, Defendants filed an amended fee motion under section 16701, subdivision (i), now seeking fees in the amount of $349,339.60, incurred for defense counsel, trial counsel, and Defendants' valuation expert.[8]

Jones opposed Defendants' fee motion, arguing he had "probable cause" to pursue enforcement of the written contract and claiming his arguments were not so frivolous as to justify an equitable fee award. If a fee award was justified it should be limited to fees relating to the partnership buyout issue, not for all fees incurred in the case. Jones did not object that the amended motion was untimely filed.

In a tentative ruling issued prior to hearing, the court indicated it was inclined to deny Defendants' section 16701 motion. At the hearing, Defendants urged the court to award fees, arguing they had incurred substantial bills to defend against claims that, after trial, were determined to

[8]    It appears the total requested amount was derived from a miscalculation of the total fees incurred for counsel ($244,059.40), trial counsel ($67,720.00), and Defendants' valuation expert ($34,060.20), which totals $345,839.60. Like the initial motion, Defendants' amended motion included a notice of motion, a memorandum of points and authorities, and numerous supporting declarations and exhibits.

8

have no legal or factual merit, and they urged the court to find that Jones's behavior in continuing to pursue the claims through trial was arbitrary and not in good faith. Jones argued the case had survived two demurrers and summary judgment and ultimately was decided only after trial. He maintained that a claim decided on disputed evidence is not the same as a claim brought arbitrarily, vexatiously, or not in good faith. The trial court commented, "I listen to this. I make a determination of whether it was capricious, whether it was arbitrary, whether it was in bad faith. And in the big scheme of listening to every part of this trial, because it was a fascinating trial too, I learned a lot. It wasn't capricious."

After the hearing, the court confirmed its tentative decision to deny Defendants' motion for attorney fees, ruling as follows: "The amended motion was untimely as it raised grounds for recovery of attorney's fees not set forth in the original motion. . . . The amended motion was filed after the time set forth under California Rules of Court, rule 3.1702. There is no stipulation on file to expand the scope of the fees. Even if the amended motion was not untimely, the court exercises its discretion and denies the motion. The court does not find plaintiff Trevor Jones acted arbitrarily, vexatiously, or not in good faith."

## DISCUSSION

Defendants appeal the trial court's denial of their section 16701 attorney fee motion. They assert reversal is warranted because "as a matter of law," Jones acted arbitrarily in pursuing claims for which the court ultimately found no evidentiary support. They further assert the trial court erred in finding the motion was untimely filed. We reject Defendants' claim that reversal is warranted and we affirm the trial court's order.

9

# I.

## *Statutory Scheme Regarding Partnerships*

"The [California Revised Uniform Partnership Act (UPA)], adopted in 1996, applies to all partnerships as of 1999.  (§ 16111, subd. (b.).)."  (*Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 226.)  "[T]he association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (§ 16202, subd. (a).)  However, "[a]n association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter."  (§ 16202, subd. (b).)

A partnership agreement can be written, oral, or implied (§ 16101, subd. (10)), and "[t]he burden of proving the existence of a partnership lies upon the party asserting its existence."  (*Mercado v. Hoefler* (1961) 190 Cal.App.2d 12, 16 (*Mercado*).)  The terms of a partnership are controlled by the partnership agreement, or by the UPA if the agreement is silent on an issue.  (§ 16103, subd. (a) ["[R]elations among the partners and between the partners and the partnership are governed by the partnership agreement.  To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership."]; *Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 457 (*Holmes*) [once partnership is established, "other provisions of the UPA and the conduct of the parties supply the details of the agreement"].)

Section 16601, subdivision (a) provides for the dissociation of a partner upon "[t]he partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner."  Under section 16701, subdivision (a), the partnership must buy out the dissociated

10

partner's interest in the partnership.  Section 16701, subdivision (b) sets forth the process for valuing the partner's interest.[9]

In connection with a buyout dispute, "[t]he court may assess reasonable attorney's fees and the fees and expenses of appraisers or other experts for a party to the action, in amounts the court finds equitable, against a party that the court finds acted arbitrarily, vexatiously, or not in good faith."  (§ 16701, subd. (i).)  The statute provides one example of the type of conduct that may justify a fee award:  "the partnership's failure to tender payment or an offer to pay or to comply with" (*ibid.*) its disclosure obligations for any buyout offer.[10]

## II.

### *Governing Legal Principles and Standard of Review*

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees."  (*Trope v. Katz* (1995) 11 Cal.4th 274, 278; Code Civ. Proc., § 1021 ["[e]xcept as attorney's fees are specifically provided by statute, the measure and mode of compensation of attorneys . . . is left to the agreement,

---

[9]    Section 16701, subdivision (b), provides:  "The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under subdivision (b) of Section 16807 if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership was wound up as of that date."

[10]    The partnership's buyout offer must be accompanied by various financial documents, including a statement of partnership assets and liabilities and a balance sheet and income statement, and "[a]n explanation of how the estimated amount of the payment was calculated."  (§ 16701, subd. (g).)

express or implied, of the parties"].)  Corporations Code section 16701 establishes an exception to the American rule—authorizing the trial court to award attorney fees when it determines that a party in a partnership dissociation and buyout action has "acted arbitrarily, vexatiously, or not in good faith."  (Corp. Code, § 16701, subd. (i).)

In interpreting this statute, we apply well established principles. "Issues of statutory interpretation are subject to our independent review. [Citation.]  'A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent.  [Citation.]  In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning.  [Citation.]  Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished.' " (*Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1596.)

"Generally, a trial court's . . . award of fees and costs[] is reviewed for abuse of discretion." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1017 ["the propriety or amount of an attorney fees award is reviewed using the abuse of discretion standard"].)  However, the standard may change depending on the particular issue under review.  " 'We independently review any legal issue regarding the appropriate criteria for a fee award.  But once those criteria are identified, we defer to the trial court's discretion in determining how they are to be exercised.  [Citation.]  In fashioning an equitable remedy, the trial court is in the best position to determine whether the criteria for a fee award have been met.  We will not disturb its judgment on this issue unless we are convinced the court abused its discretion.  [Citation.]  A trial court abuses its discretion

12

only where its action is clearly wrong and without reasonable basis.' " (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 236-237 (*Powell*).) To the extent a trial court's ruling is based on factual determinations, we review the record for substantial evidence. (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.) " 'We look at the evidence in support of the trial court's finding, resolve all conflicts in favor of the respondent and indulge in all legitimate and reasonable inferences to uphold the finding.' " (*Ibid.*) "We consider the question of whether a statute provides for a mandatory award of attorney fees under the de novo standard of review." (*James L. Harris Painting & Decorating, Inc. v. West Bay Builders, Inc.* (2015) 239 Cal.App.4th 1214, 1218.)

III.

*Attorney Fees Request*

Pursuant to section 16701, subdivision (i), "[t]he court may assess reasonable attorney's fees and the fees and expenses of appraisers or other experts for a party to the action, in amounts the court finds equitable, against a party that the court finds acted arbitrarily, vexatiously, or not in good faith. The finding may be based on the partnership's failure to tender payment or an offer to pay or to comply with subdivision (g)." (§ 16701, subd. (i).) There is no case law defining "arbitrarily, vexatiously, or not in good faith" under this fee shifting statute. As discussed *post*, we conclude that (1) the statutory terms ("arbitrarily, vexatiously, or not in good faith") are disjunctive and each may provide a basis for a fee award; (2) attorney fees may be warranted based on claims that *objectively* lack legal merit or are *subjectively* pursued in

13

bad faith (or both); and (3) the decision to award fees is not mandatory, but rather lies within the broad discretion of the trial court.[11]

"The ' "ordinary and popular" ' meaning of the word 'or' is well settled. [Citation.] It has a disjunctive meaning: 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that." ' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 622.) We see no basis to depart from this rule of statutory construction, and thus conclude attorney fees may be awarded when any of the three statutory criteria is established.

The parties premise their claims on different aspects of the statutory criteria. Defendants primarily focus on the "arbitrarily" language, contending Jones acted arbitrarily "as a matter of law" by bringing a baseless legal claim lacking in evidentiary support, even if the claim was not brought with "maliciousness or ill will." Jones, on the other hand, primarily focuses

---

11      As previously noted, section 16701 applies to actions by a "dissociated partner," which is what Jones claimed to be, against the "partnership," which Jones claimed was comprised of himself and the defendants Goodman and Thall. Section 16405, subdivision (b)(2)(B) allows the partner to maintain an action against the partnership for legal or equitable relief to have the partner's interest in the partnership purchased. The parties do not dispute that section 16701 applies here, in Jones's action as a dissociated partner, despite Jones's ultimate failure at trial to prove the existence of a partnership. We assume without deciding that the court could award attorney fees under the statute—if it had concluded Jones acted arbitrarily, vexatiously, or not in good faith—even if a partnership was not formed. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870 ["It is now settled that a party is entitled to attorney fees under [Civil Code] section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.' "]; but see *SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.* (2007) 148 Cal.App.4th 663, 675-676 [authorizing fee award only in cases "arising under" the Mobilehome Residency Law (MRL); "[i]t is not sufficient that the case 'relates to' the MRL"].)

on the "good faith" language, contending the trial court acted well within its discretion in finding that Jones did not act in bad faith.

" 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] '[A] construction making some words surplusage is to be avoided.' " (*People v. Black* (1982) 32 Cal.3d 1, 5.) " 'While the interpretation of similar words in other statutes is not controlling, such interpretation is helpful in arriving at the legislative intent. [Citations.] . . . ' [Citations.] Under general rules of statutory construction, we may consider the judicial interpretation of similar words used in another statute dealing with analogous subject matter." (*Estate of Maron* (1986) 183 Cal.App.3d 707, 712.) Because the terms "arbitrarily," "vexatiously," and "not in good faith" are not defined in section 16701, we look to other attorney fees statutes containing comparable language for guidance.

In *Gemini Aluminum Corp. v. California Custom Shapes* (2002) 95 Cal.App.4th 1249 (*Gemini*), this court construed the fee shifting provisions in Civil Code section 3426.4 for trade secret misappropriation claims brought in "bad faith."[12] We "conclude[d] that 'bad faith' for purposes of [Civil Code] section 3426.4 requires *objective* speciousness of the plaintiff's claim, as opposed to frivolousness, and its *subjective* bad faith in bringing or maintaining the claim." (*Gemini*, at p. 1262, italics added.) The *Gemini* court further recognized that "[a]n award of attorney fees for bad faith

---

[12]   The statute provides:  "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party."  (Civ. Code, § 3426.4.)

15

constitutes a sanction [citation], and the trial court has broad discretion in ruling on sanctions motions." (*Ibid.*)

Similarly, this court in *Powell*, *supra*, 26 Cal.App.5th 219 construed Probate Code section 17211, subdivision (a), as containing both objective and subjective criteria for the recovery of attorney fees.[13] We concluded that "[r]easonable cause is evaluated under an objective standard of whether any reasonable person would have tenably filed and maintained the objection." (*Powell*, at p. 234.) By contrast, we held that "[b]ad faith involves a subjective determination of the contesting party's state of mind—specifically, whether he or she acted with an improper purpose." (*Ibid.*)[14]

The Court of Appeal in *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 7 (*Smith*) reached a similar conclusion regarding the

---

[13] Probate Code section 17211, subdivision (a) provides: "If a beneficiary contests the trustee's account and the court determines that the contest was *without reasonable cause* and in *bad faith*, the court may award against the contestant the compensation and costs of the trustee and other expenses and costs of litigation, including attorney's fees, incurred to defend the account." (Italics added.)

[14] With respect to the standard of review on appeal, we found that a finding of bad faith is reviewed under the deferential substantial evidence standard and, "[i]f there is no dispute as to what facts were known at the time the contest was initiated or maintained, the existence of reasonable cause is a question of law." (*Powell, supra*, 26 Cal.App.5th at p. 234.)

16

attorney fees provision in Business and Professions Code section 809.9.[15] The statutory language there referred to conduct that was "frivolous, unreasonable, without foundation, or in bad faith." (Bus. & Prof. Code, § 809.9.) The court concluded that "the terms 'frivolous,' 'unreasonable,' and 'without foundation' are objective standards that might overlap," and "the term 'bad faith' is a subjective standard concerned with a defendant's motives for defending or litigating a lawsuit." (*Smith*, at p. 7.) The court further concluded that "the question whether a party's conduct in litigating a suit was 'without foundation' is an issue that the courts must decide as a matter of law under an objective test," and was therefore subject to independent review on appeal. (*Id*. at p. 31; see *id*. at pp. 27-28 [because the plain language of the statute provided for a mandatory award of attorney fees when the statutory criteria were met, the appellate court "will subject questions of law to an independent review," and "review findings of fact under the substantial evidence test, except where those findings can be made as a matter of law"].)

Like the *Gemini*, *Powell*, and *Smith* courts, we conclude the statute here contains both objective and subjective criteria that may trigger an award of attorney fees. Black's Law Dictionary defines "arbitrary" as "of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures." (Black's Law

---

[15] Business and Professions Code section 809.9 provides in relevant part: "In any suit brought to challenge an action taken or a restriction imposed which is required to be reported pursuant to Section 805, the court shall, at the conclusion of the action, award to a substantially prevailing party the cost of the suit, including a reasonable attorney's fee, if the other party's conduct in bringing, defending, or litigating the suit was frivolous, unreasonable, without foundation, or in bad faith."

17

Dict. (11th ed. 2019) p. 129, col. 1.) A "vexatious suit" is defined as "[a] lawsuit instituted maliciously and without good grounds, meant to create trouble and expense for the party being sued." (*Id.*, p. 1876, col. 2.) And "acting in good faith" is defined as "[b]ehaving honestly and frankly, without any intent to defraud or to seek an unconscionable advantage." (*Id.*, p. 33, col. 1.) "Bad faith" in turn is defined as "[d]ishonesty of belief, purpose, or motive." (*Id.*, p. 171, col. 2.) These definitions, and the common understanding of these terms, supports our conclusion that the statute contains both objective and subjective criteria. We review the objective criteria under a de novo standard of review, to the extent we are examining whether a claim lacks legal merit, and we review a court's factual findings regarding the subjective criteria under a deferential substantial evidence standard of review.[16]

---

[16] There may be some overlap in the statutory criteria, but whether a party acts "arbitrarily" is best evaluated under an objective standard and whether a party acts "vexatiously" and "not in good faith," is best evaluated under a subjective standard. (See *Powell, supra,* 26 Cal.App.5th at p. 234 ["reasonable cause" is evaluated under an objective standard but "bad faith" is evaluated under a subjective standard]; *Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 79 [" 'The award of attorney's fees under Government Code section 800 is allowed only if the actions of a public entity or official were wholly arbitrary or capricious. The phrase "arbitrary or capricious" encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute [citation]. The determination of whether an action is arbitrary or capricious is essentially one of fact, within the sound discretion of the trial court.' "]; see also *Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 920-921 [courts have interpreted the Consumers Legal Remedies Act provision authorizing an award of attorney fees to a prevailing defendant when plaintiff's action is " 'not in good faith' " (Civ. Code, § 1780, subd. (d)) to require a finding of subjective bad faith on the part of the plaintiff].)

18

In both instances, however, the ultimate determination of whether an attorney fee award is warranted is left to the trial court's discretion based on the plain language of section 16701. Unlike the fee shifting statute at issue in *Smith, supra,* 188 Cal.App.4th 1,[17] the assessment of fees under section 16701 is discretionary, as the statute provides that the court "may assess" fees, but is not required to do so. (Corp. Code, § 16701, subd. (i).) Courts construing comparable statutory language have reached the same conclusion. (See, e.g., *Bustos v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 369, 381 ["[Civil Code s]ection 2924.12, subdivision (h) merely authorizes a trial court to award attorney fees and costs to a prevailing borrower. Such an award is discretionary, not mandatory."].)[18] The Legislature knows how to adopt mandatory fee shifting statutes when it desires. For example, the California Public Records Act includes a mandatory fee-shifting statute, providing that "[t]he court shall award court costs and reasonable attorney's fees to the requester should the requester prevail in litigation filed pursuant to this section." (Gov. Code, § 6259, subd. (d).) "An award of costs and attorney fees pursuant to this provision is mandatory if the plaintiff prevails." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 427.) A prevailing defendant on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) The statutory provision is mandatory. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 490.) Civil Code section 5975 deals with the enforceability of covenants and restrictions in a common interest

---

[17]     See footnote 15, *ante.*

[18]     Civil Code section 2924.12, subdivision (h) states in relevant part that "[a] court *may award* a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section." (Italics added.)

development's governing document and provides in relevant part that "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (Civ. Code, § 5975, subd. (c).) "Reviewing courts have found that this provision of the Davis-Stirling Act ' "reflect[s] a legislative intent that [the prevailing party] receive attorney fees *as a matter of right* (and that the trial court is therefore *obligated* to award attorney fees) whenever the statutory conditions have been satisfied." ' " (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 773.) We find no comparable reflection of legislative intent to impose a mandatory obligation on trial courts considering attorney fee requests under Corporations Code section 16701. We apply the plain meaning of the statute and conclude the trial court may, but is not required to, award attorney fees when the statutory requirements are met.

Applying these principles, we conclude the trial court did not err when it exercised its discretion to deny Defendants' request for attorney fees under section 16701, subdivision (i).

We first consider Jones's actions under an "objective standard of whether any reasonable person would have tenably filed and maintained" a claim for a buyout of his interest in a purported partnership. (*Powell*, *supra*, 26 Cal.App.5th at p. 234.) Under the Corporations Code, "the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (§ 16202, subd. (a).) Jones's claims survived summary judgment and proceeded to trial, indicating the parties' dispute was a factual question of whether the parties had agreed to carry on as coowners the Pura Vida business of selling bracelets for profit, and if so, whether their agreement was legally enforceable. There was no dispute that the parties discussed some

20

type of business arrangement involving OUTnSD and Pura Vida, and Jones proposed a written agreement documenting their discussions. The parties simply disputed the nature and existence of their business relationship. The written agreement used the terms "partners" and described the objectives and expected contributions from the parties. The written agreement further provided that Jones gave Goodman a five percent "ownership" in OUTnSD and Goodman gave Jones a five percent "ownership" in Pura Vida, and that "[p]ayout is not necessary unless money is being taken or exchanged for whatever reason." Jones testified that he was actively involved in the Pura Vida bracelet business, including design, marketing, sales, and promotional efforts, and the parties assisted one another in their respective business endeavors. (See *Greene v. Brooks* (1965) 235 Cal.App.2d 161, 165-166 ["The ultimate test of the existence of a partnership is the intention of the parties to carry on a definite business as coowners. Such intention may be determined from the terms of the parties' agreement or from the surrounding circumstances."]; *Holmes, supra*, 74 Cal.App.4th at p. 454 ["the rules to establish the existence of a partnership . . . should be viewed in the light of the crucial factor of the intent of the parties revealed in the terms of their agreement, conduct, and the surrounding circumstances when determining whether a partnership exists"]; *Mercado, supra*, 190 Cal.App.2d at p. 17 ["the mere fact that [one party] contributed labor and skill rather than capital does not preclude the existence of a partnership"].) Although a corporation— Creative Genius, Inc., d/b/a Pura Vida—was incorporated prior to the alleged

21

formation of their partnership,[19] Jones explained he was not aware of the details involving Creative Genius, Inc.'s incorporation or its status and relation to what he viewed as the Pura Vida bracelet business venture. Jones thus sought a determination that the parties had entered into an enforceable partnership agreement that encompassed the Pura Vida business. We agree with the trial court's assessment that Jones's claims in this case were "very unique." There is certainly ample support for the trial court's conclusion that no partnership was formed and that Jones's claim regarding the existence of a partnership lacked legal merit based on the evidence introduced at trial. But that is not the question before us. Despite the defects in Jones's claims,

---

[19] Under the Corporations Code, unless persons associated to do business together establish a formal entity like a corporation, the association is deemed to be a partnership regardless of the parties' intent. (See § 16202, subd. (a) ["*Except as otherwise provided in subdivision (b)*, the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership."], italics added; *id.*, subd. (b) ["An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter."].)

we cannot say that no reasonable attorney would have advanced a similar argument.[20]

We next consider Jones's subjective good faith in bringing his claims. The trial court's comments at the fee motion hearing indicate the court believed that Jones pursued the action in subjective good faith, based on his honest but mistaken belief that the men had agreed to share the Pura Vida and OUTnSD businesses when they were living and working together simultaneously on their entrepreneurial endeavors. The court remarked that it had listened to all the evidence presented at trial, "learned a lot," and believed "[i]t wasn't capricious." The trial court, which observed the parties throughout the litigation, was in the best position to determine whether

_____

[20] The trial court concluded that Jones's claim that Pura Vida was both a corporation and a partnership was "a legal impossibility," and based on the evidence before it, the company could not be both a partnership and a corporation at the same time. We do not disagree with the trial court's ultimate conclusion, but we note that Jones's counsel contended he was not arguing that one entity could be both a corporation and a partnership at the same time. For example, Jones's counsel stated: "So you've got one separate legal entity. You've got the owners, the stockholders, who are not fictions. They're real people and they're separate and apart from the corporation. And those people are in partnership with a third person. [¶] So it's—they're very much joined at the hip, but it's not that the corporation is also a partnership. It's that the corporate owners are in partnership with a third person." (See *B.K.K. Co. v. Schultz* (1970) 7 Cal.App.3d 786, 796 [an agreement among three individuals that they would associate themselves in business for profit and have equal ownership interests made them joint venturers or partners, even though they contemplated eventual use of corporate form]; *Headfirst Baseball LLC v. Elwood* (D.D.C. 2016) 168 F.Supp.3d 236, 244, fn. 5 ["[A] reasonable jury could . . . find that the alleged partnership was in the business of expanding whatever business [the initial LLC] operated."]; but see *Eng v. Brown* (2018) 21 Cal.App.5th 675, 694 ["An association organized as another entity (e.g., a corporation) is not a partnership. (§ 16202, subd. (b).) Absent unusual circumstances, this principle holds even if the corporation began as a partnership."].)

Jones acted with a subjective state of mind that warranted imposition of attorney fees. Based upon its observations and credibility determinations, the trial court specifically concluded it "does not find plaintiff Trevor Jones acted arbitrarily, vexatiously, or not in good faith." There was substantial evidence supporting this conclusion.[21]

We reject Defendants' claim that Jones's actions were arbitrary "as a matter of law" based on the trial court's findings in the *judgment*, rather than its findings following the hearing on Defendants' fee request. The trial court's ruling on Defendants' fee request is not inconsistent with its conclusion that Jones failed to establish his claims by a preponderance of the evidence at trial. Defendants contend Jones pursued an action which was " 'unsupported by substantial evidence' and/or 'fair or substantial reason.' " But as previously noted, a fee award under section 16701 is not mandatory. Even if Jones's claims objectively lacked legal merit and were clearly erroneous, the trial court could exercise its discretion to conclude that—based on its consideration of the totality of circumstances and the objective and subjective statutory criteria in section 16701—a fee award was not justified here. (See *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1073 ["a trial court is entitled to infer from the utter lack of merit that the

---

[21] The trial court did not find Jones engaged in any improprieties in the case. Although the court concluded there was insufficient evidence that Goodman and Thall signed the purported partnership agreement, the court did not conclude the document was forged. The court noted that a handwriting expert did not testify, although either party was able to present such expert testimony, and concluded that Jones simply had not met his burden of proof on this issue. There similarly was no other evidence that Jones engaged in any acts of dishonesty or otherwise fraudulent conduct. The parties participated in two mediation sessions, further demonstrating their good faith efforts to reach a compromise, but were unable to resolve their dispute without the trial court's assistance.

party knew that it lacked such merit, and yet continued to pursue the action for some ulterior motive . . . , but it is not mandatory that it do so"]; *Indian Springs v. Palm Desert Rent Review Bd.* (1987) 193 Cal.App.3d 127, 137 ["An erroneous interpretation of the law does not per se suggest that the action of the public entity or an officer thereof was arbitrary or capricious."]; *Byrnes v. Riles* (1984) 157 Cal.App.3d 1170, 1182 ["The trial court's ruling that certain findings and determinations were not supported by the record does not, in itself, constitute evidence of arbitrary and capricious conduct by the hearing officer."]; see also *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168 [it was an abuse of discretion to find a legal argument frivolous when it was at least "arguable"]; *Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823 [" ' "Attorney's fees may not be awarded [citation] simply because the administrative entity or official's action was erroneous, even if it was 'clearly erroneous.' " ' "].)  After listening to all the evidence and arguments from both sides, the trial court rejected Jones's claims on the merits, but found that he did not pursue them arbitrarily, vexatiously, or not in good faith.

In sum, we conclude the trial court did not abuse its discretion in declining to grant discretionary attorney fees under section 16701, subdivision (i).  Jones's claims lacked objective legal merit, but we cannot say that no reasonable attorney would have pursued similar relief, and there is substantial evidence in the record to support the trial court's finding that Jones's subjective state of mind did not evince a lack of good faith.

IV.

*Timeliness of Motion*

"A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—must be

25

served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . . ." (Cal. Rules of Court, rule 3.1702(b)(1).) The parties may stipulate to extend the time for filing the motion. (*Id.*, subd. (b)(2).) "For good cause, the trial judge may extend the time for filing a motion for attorney's fees in the absence of a stipulation . . . ." (*Id.*, subd. (d).) Under Rule 8.104, a notice of appeal must be filed within 60 days after the service of the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1)(B).)[22]

Defendants here served notice of entry of judgment on October 22, 2018, so time to appeal from this judgment expired on December 21, 2018, 60 days after service of the notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1)(B).) Defendants filed their initial section 16701 fee motion (seeking attorney fees only) on December 21, 2018, in compliance with rule 3.1702(b)(1). (*Highland Springs Conference & Training Center v. City of Banning* (2019) 42 Cal.App.5th 416, 429 ["Under rule 3.1702(b)(1), . . . fee motions were required to be served and filed within 60 days after notice of entry of the . . . judgment was served . . . ."].) However, Defendants filed their amended motion (seeking both attorney and expert fees) on January 11, 2019—more than 60 days after notice of entry of the judgment was served. The amended motion—which added a new request for expert fees on top of the preexisting request for attorney fees—was untimely under California Rules of Court, rule 3.1702(b)(1).

---

[22] Rule 8.108, not applicable here, extends the time to appeal under specified circumstances, for example, if any party files and serves a motion for new trial, a motion to vacate judgment, a motion for judgment notwithstanding the verdict, or a motion to reconsider. (Cal. Rules of Court, rule 8.108(a)-(e).)

Defendants contend the trial court lacked authority to deny the amended motion as untimely because they filed their initial motion within the rule's deadline, which is not jurisdictional; substantial compliance with the rule is all that is required; and the amended motion should be deemed to "relate back" to the initial motion, just as an amended pleading might relate back to the filing of the original pleading.[23] Defendants further contend Jones waived any objection to the motion's untimeliness by failing to raise the issue, which would have caused Defendants' counsel to explain why good cause existed to allow the amendment. They claim that, rather than denying the amended motion sua sponte, the court should have disregarded the added request for expert fees and entertained the initial request for attorney fees only.

Defendants' arguments are not well taken. Their initial motion—which sought only attorney fees—was timely filed. However, their amended motion—which added a request for expert fees in addition to attorney fees—was filed after the time provided in rule 3.1702(b)(1) expired. Recognizing the late filing was not a jurisdictional bar to the motion's consideration (Cal. Rules of Court, rule 3.1702(d); see *Haley v. Casa Del Rey Homeowners Association* (2007) 153 Cal.App.4th 863, 880 [recognizing that time

---

23 "Under the relation-back doctrine, an amendment relates back to the original complaint if the amendment (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality." (*Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 276.) A motion is not a complaint, or any other type of pleading. (Code Civ. Proc., § 422.10 ["The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints."].) Defendants provide no authority for the proposition that the relation-back doctrine applies to anything other than pleadings.

27

limitations pertaining to a memorandum of costs are not jurisdictional]), the court acknowledged that the amended motion was untimely filed, yet nonetheless considered it on the merits.[24] The order denying the motion indicates the trial court "exercise[d] its discretion" and declined to find that Jones "acted arbitrarily, vexatiously, or not in good faith." (§ 16701, subd. (i).) Thus, even assuming the trial court erred in finding the amended motion was untimely, the assumed error was not prejudicial because the trial court alternatively decided the motion on the merits. (Cal. Const., art. VI, § 13 [no reversal unless "error complained of has resulted in a miscarriage of justice"].)

---

[24] Defendants have failed to show the court made either an express or implied finding that good cause justified the delay. (Cal. Rules of Court, rule 3.1702(d).)

## DISPOSITION

The order is affirmed.  Respondent is entitled to his costs on appeal.

GUERRERO, J.

WE CONCUR:


HALLER, Acting P. J.


DATO, J.