Filed 12/23/25  In re Goo Living Trust CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In the matter of Erling and Mitsuko GOO LIVING TRUST. | B336555 |
| | (Los Angeles County Super. Ct. No. BP172111) |
| PAUL SAYEGUSA et al., Plaintiffs and Respondents, v. CURTIS OGAWA, Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Juarez, Judge.  Affirmed.

Law Offices of Stanley H. Kimmel and Stanley H. Kimmel; Alison Minet Adams, for Appellant.

Bock & Plummer, Michael C. Bock, for Plaintiffs and Respondents.

## INTRODUCTION

This is the second appeal involving the Living Trust of Erling and Mitsuko S. Goo.[1] Mitsuko's cousin, Curtis Ogawa, was trustee of the trust following Mitsuko's death in 2007. A 2018 arbitration award found that Ogawa breached his fiduciary duties to two trust beneficiaries, Timothy Sayegusa and Paul Sayegusa, Mitsuko's nephews. The arbitration award was confirmed by the probate court, and the probate court's order was affirmed by this court. (*Sayegusa v. Ogawa* (Jan. 29, 2020, No. B294886 [nonpub. opn.]).

After the Sayegusas became successor trustees, they filed a petition against Ogawa seeking an accounting and alleging some additional breaches of fiduciary duty. The court ordered an accounting. The matter proceeded to a bench trial in which the probate court largely held in favor of the Sayegusas, ordering Ogawa to pay the trust a total of $121,813.50 and pay the Sayegusas' attorney fees. Ogawa appealed.

Ogawa asserts three arguments on appeal. First he contends the probate court was required to issue a statement of decision, and because it did not, the court's order on the Sayegusas' petition is void. We disagree. Neither party timely requested a statement of decision as required by Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590, the court was not required to issue one, and the lack of a statement of decision therefore does not render the court's order void.

Second, Ogawa challenges a portion of the award for property taxes and penalties that accrued on a property the trust

---

[1] We occasionally refer to members of the Goo family by first name to avoid confusion.

held for the benefit of the Sayegusas. However, Ogawa challenges this finding on a basis he did not assert below, and he has not supported his argument with any citations to the record. This contention therefore has been forfeited.

Finally, Ogawa challenges the attorney fee award under Probate Code section 17211, which allows for an award of attorney fees when a party's opposition lacks reasonable cause. We agree with the probate court that Ogawa's opposition lacked reasonable cause. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Previous case

The following background facts are from our previous nonpublished opinion, *Sayegusa v. Ogawa* (Jan. 29, 2020, No. B294886).

The trust at issue was settled by Erling and Mitsuko Goo in 1985 and amended by Mitsuko after Erling's death in 2005. Ogawa became trustee upon Mitsuko's death in 2007.  The trust corpus consisted largely of several duplexes on 6th Avenue in Los Angeles. As relevant here, one duplex was to be distributed to Meyer Goo, Erling's brother (the Meyer property).  Another duplex was to be distributed in equal shares to the Sayegusas, Mitsuko's nephews (the Sayegusa property).  The trust estate was to be distributed upon Mitsuko's death.  However, the trust included an age restriction for the distribution to the Sayegusas: "at age 55 they get 50% of their portions, the 50% shall be divided equally between them, at age 60 they shall be distributed the 100% balance of their portions divided equally between the two of them."  Timothy Sayegusa turned 55 in 2015 and 60 in 2020; Paul Sayegusa turned 55 in 2024 and will turn 60 in 2029.

3

The trust further provided that the balance of trust assets would be liquidated and distributed. After one distribution to a charity, "the remaining balance of the trust assets after any taxes are paid" was to be divided among Ogawa, the Sayegusas, Meyer, and others.

In 2016, the Sayegusas filed a petition seeking an accounting, distribution of the trust assets, surcharge of Ogawa for misuse of the trust assets, and removal of Ogawa as trustee. The Sayegusas and Ogawa submitted the dispute to binding arbitration. In May 2018 the arbitrator held in favor of the Sayegusas and against Ogawa, finding that Ogawa had breached numerous fiduciary duties to the Sayegusas. The arbitrator ordered Ogawa removed as trustee, and appointed the Sayegusas as co-trustees. The arbitrator surcharged Ogawa $194,647 in lost rents and $42,065 in expenses, for a total surcharge of $236,712, plus prejudgment interest. She further ordered Ogawa to transfer one of the two duplexes he received from the trust back into the trust, that the transferred duplex be sold, and that the proceeds from the sale used to satisfy the arbitration award and related award for attorney fees and costs. The arbitrator found that "Ogawa opposed Petitioners' claims for surcharge without reasonable cause and in bad faith."

In late 2018 the probate court granted the Sayegusas' petition to confirm the award and appointed the Sayegusas as successor co-trustees. The court's order stated in part, "Timothy and Paul Sayegusa are confirmed as successor co-trustees of the Living Trust of Erling and Mitsuko Goo. Curtis Ogawa is confirmed as removed trustee. . . . Removed Trustee Curtis Ogawa shall transfer all funds belonging to the Living Trust of Erling and Mitsuko Goo currently in his possession, custody, or

4

control to Timothy and Paul Sayegusa as successor co-trustees. Other than the attorney's fees and costs ordered herein, each party shall bear their own fees and costs, except as otherwise authorized by law." That order was stayed while Ogawa appealed, and in January 2020 this court affirmed the ruling. (*Sayegusa v. Ogawa, supra.*)

## B. This case

### 1. Petition

In June 2020, the Sayegusas filed a petition seeking the following: 1. an order to show cause re: contempt because Ogawa was refusing to comply with the previous judgment; 2. to compel distribution of trust assets in accordance with the judgment; 3. to surcharge Ogawa for waste, damage, and misfeasance between early 2018 and 2020; 4. an injunction barring Ogawa from interfering in trust business; and 5. an accounting. The Sayegusas asserted that although they were the prevailing parties in the arbitration in all respects, Ogawa failed to comply with the arbitrator's orders.

The Sayegusas alleged that Ogawa had "reimbursed" himself for various trustee-related costs despite no longer being trustee, and that he had used trust assets to pay his legal fees. On December 7, 2018, Ogawa transferred $13,303.00 from a trust bank account to himself.

The Sayegusas also alleged that a property tax bill of $50,400.30 and a penalty of $15,090.75 on the Sayegusa property had "come to light" after the arbitration, because Ogawa "concealed the existence and/or extent of this problem until subsequent to the arbitration." The Sayegusas contended there was no legitimate reason for the tax bill to have accumulated substantial penalties and interest. They also alleged that based

5

on the language of the trust, all tax obligations were supposed to be paid *before* distributions to beneficiaries, but Ogawa placed the entire tax burden on the Sayegusas.

The Sayegusas asserted that they had been "denied the benefits of their lawful portion of the Judgment and additionally has been damaged in the form of lost revenue and business opportunities, interest, costs, and attorneys' fees." They sought various remedies, including an order to show cause re: contempt, an accounting and attorney fees.

### 2. Trial briefs

In response to the Sayegusas' June 2020 petition, the court ordered an accounting.[2] Ogawa filed an initial accounting on March 5, 2021 and an "amended final account and report" on January 5, 2022. The Sayegusas filed objections to the final accounting. The final accounting and objections informed some of the arguments in the parties' trial briefs, as discussed below.

In preparation for trial, between February and April 2023 the parties filed trial briefs, opposition briefs, and reply briefs, as well as evidence supporting their positions. As relevant to this appeal, their arguments focused on the following five issues:

#### i. *Life insurance proceeds*:

Ogawa received life insurance proceeds totaling $9,479.33. The Sayegusas asserted that these were trust funds that Ogawa had misappropriated, because Mitsuko Goo's will had a pourover provision requiring these funds to be placed into the trust. Ogawa argued that the "funds belong in the estate," and the

---

[2]     The court's order is not in the record on appeal; Ogawa's amended final account and report states that it is in response to a court order.

Sayegusas failed to comply with the appropriate procedures in the Probate Code for transferring such assets.

*ii.    Accountant fees*

The Sayegusas asserted that Ogawa improperly paid a total of $3,425.00 from the trust for accountant fees in September 2018, October 2019, and March 2020.  Ogawa argued that the trust "clearly authorized him to pay these expenses," even after he had been removed as trustee and while the appeal was pending.

*iii.    Transfer of $13,303.00*

Ogawa's accounting showed that Ogawa paid himself a "reimbursement" of $13,303 from trust funds on December 10, 2018.  The Sayegusas pointed out that Ogawa did this after he was ordered to be removed as trustee, despite being "on notice that he was no longer authorized to act on behalf of the trust."  Ogawa asserted that the $13,303 was income from Ogawa's own property that was accidentally deposited into a trust account, so Ogawa's transfer to himself was simply a correction.

*iv.    Taxes on the Sayegusa property*

The Sayegusas also asserted that a tax obligation was incurred on the Sayegusa property while it was being held by the trust, and the "end result was an improper and $50,421.29 reduction in [the Sayegusa's] share of the Trust."  The Sayegusas noted the language of the trust stating that trust assets were to be distributed "after any taxes are paid."  Ogawa disagreed that "the Trust's corpus should pay the property taxes on the property specifically gifted to" the Sayegusas.

*v.    Taxes on the Meyer property*

The Sayegusas asserted that the trust required the Meyer property to be transferred immediately to Meyer, but Ogawa as

7

trustee failed to timely transfer it, and in the meantime the property accrued significant taxes and penalties. Ogawa then improperly paid the property taxes out of trust funds, thereby diminishing the Sayegusas' distributions. The Sayegusas asserted that Ogawa should be required to reimburse the trust $45,184.88 as a result. Ogawa agreed that payment of Meyer's taxes out of trust funds was a "mistake", but he argued that "it is reasonable for a layman like Curtis Ogawa to get it wrong and to pay the tax bills for the Trust out of funds held in the Trust's corpus." Ogawa also argued that "the Sayegusas should have mitigated damages by seeking the funds from" Meyer as "the party that was unjustly enriched," rather than from Ogawa as former trustee.

In addition to raising the five issues above, the Sayegusas requested an award of attorney fees. They noted that the arbitrator had already determined that Ogawa defended the previous litigation in bad faith, and "years have been wasted post-arbitration by non-meritorious, bad-faith positions posited by" Ogawa.

Ogawa's briefing also included arguments that after the previous litigation, he had "satisfied the judgment in full, acted in good faith, and . . . sought to put an end to this matter." Ogawa argued that the Sayegusas' request for a finding of contempt should be denied, and that the Sayegusas were attempting to make Ogawa "pay again and again" "out of spite." Ogawa further asserted that the Sayegusas "vindictively filed their spite litigation against Ogawa to perpetuate the feud," and they had "no intention of moving forward and want to punish Ogawa more." Ogawa also argued that the Sayegusas should pay

their own attorney fees, and should also pay Ogawa's fees because they were acting in bad faith.

### 3. Court hearing and decision

At the hearing on the petition on April 20, 2023, the probate court noted that the parties "did a good job on preparing the issues" in their briefing. The parties argued their respective positions, and the court asked questions. The court stated that it would consider the arguments and issue a ruling by minute order, and stated that the matter was submitted. Notably, neither party requested a statement of decision. The time stamps on the reporter's transcript note that the hearing began at 9:54 a.m. and ended at 10:09 a.m.

On May 1, 2023, the probate court issued a minute order partially granting the Sayegusas' petition. The court stated that Ogawa's "arguments are unpersuasive. Those arguments fail to address the particulars raised by [the Sayegusas] and fail to provide any persuasive factual or legal basis to deny [the Sayegusas'] claims, excepting that there is insufficient process and evidence to find [Ogawa] in contempt."

The court found that the life insurance funds of $9,479.33 belonged to the trust, not the estate, and Ogawa had "misappropriated these funds." As for taxes on the two properties, Ogawa's "actions resulted in penalties that required [the Sayegusas'] payments to their detriment under the trust. [Ogawa] is responsible to rectify the damage to [the Sayegusas'] trust benefits, namely $50,421.29 and $45,184.88." The court continued, "[Ogawa] used trust assets to pay his accountancy fees, totaling $3,425, without seeking costs from arbitration, or seeking court authority. This was in contravention to the court's order and his fiduciary duties. [Ogawa] paid himself $13,303

9

after his removal.  This was in contravention to the court's order and his fiduciary duties."  The court ordered Ogawa to pay the trust a total of $121,813.50 "forthwith."  The court also ordered that Ogawa pay the Sayegusas' "reasonable attorney fees and costs expended to bring forth and argue this petition."

The court stated that there was "insufficient compliance with Code of Civil Procedure section 1211, et seq." to make a finding of contempt, but it "admonishe[d] [Ogawa] that his actions thwarting the court's previous order smacks of contemptuous action" and he could be found in contempt in the future.  The court set a status hearing for August 31, 2023, but stated that it would take the matter off calendar if the parties filed a joint stipulation confirming compliance with the court's ruling .

The court ordered the Sayegusas' counsel to prepare an order after hearing.

4.      Requests for statement of decision and attorney fees

On May 4, 2023, Ogawa filed a request for statement of decision under Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590.[3]  Ogawa requested that the court "explain[ ] the factual and legal basis for the Court's ruling" regarding the five issues.  On May 12, 2023, the Sayegusas also filed a request for statement of decision or in the alternative for a clarification of the court's decision as to whether the court was awarding interest on the May 1 order.

On May 22, 2023, the Sayegusas filed a motion for attorney fees pursuant to the May 1 order, seeking $95,625.00 in attorney

---

[3]      All further undesignated section references are to the Code of Civil Procedure, and all undesignated rule references are to the California Rules of Court.

10

fees and $2,070.63 in costs.  Ogawa opposed the motion, arguing that the Sayegusas "failed to establish that fees are allowable." He asserted that the court had not made the necessary findings under Probate Code section 17211 subdivision (b), which allows for attorney fees when "a beneficiary contests the trustee's account and the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith." Ogawa further argued that the fees requested were "unreasonable and excessive."

The Sayegusas apparently served a proposed order to Ogawa, which is not in the record on appeal. Ogawa filed objections to the proposed order, re-arguing many of the points from his earlier briefing and adding additional arguments questioning the court's authority.  Ogawa also filed objections to a "revised proposed order" that is not in the record on appeal.

At a hearing on August 31, 2023, the court noted that the parties had requested a statement of decision, but said the court would not issue one.  The court stated, "I don't believe the matter as it was submitted to the court for ruling meets the requirements under the California Rules of Court for a statement of decision."

Turning to the motion for attorney fees, the court said the Sayegusas were entitled to fees under Probate Code section 17211.  However, under that statute such fees must be tied to an accounting, so recovery of fees was limited to the time after Ogawa filed his final accounting.  The court ordered the Sayegusas' counsel to submit a new proposed order reflecting the May 1 ruling and attorney fee finding.

The Sayegusas filed a revised proposed order; Ogawa objected to it.

11

On September 12, 2023, the court filed a written ruling on the submitted motion for attorney fees. The court found that the Sayegusas' "petition qualifies as a contest to an accounting" under Probate Code 17211 because it was "directly related to Ogawa's January 5, 2022 Amended Final Account and Report." The court observed that Probate Code section 17211 allows for an award of costs when "opposition to an account contest was without reasonable cause and in bad faith." The court noted that in its May 1 order, "the court ruled Ogawa's opposition 'fail[ed] to provide any persuasive factual or legal basis to deny [the Sayegusas'] claims.' The court also admonished Ogawa and found that 'his actions thwarting the court's previous order smacks of contemptuous action.' As Ogawa's opposition was made in furtherance of his noncompliance of a court order, the court finds the opposition was without reasonable cause and in bad faith."

The court held that the Sayegusas were not entitled to fees incurred before Ogawa's initial accounting was filed. Subtracting those hours, the court awarded the Sayegusas $67,350 in attorney fees. The court ordered the Sayegusas to prepare an order after hearing.

The Sayegusas submitted an order after hearing that the court signed on November 21, 2023. It included the court's rulings from the May 1 minute order, and included the court's award of attorney fees but did not state an amount. The court signed a separate order after hearing on January 2, 2024 awarding the Sayegusas $67,350 in attorney fees.

Ogawa filed separate notices of appeal from the November 21 and January 2 orders. We granted Ogawa's motion to consolidate the two appeals.

12

## DISCUSSION

Ogawa asserts five issues on appeal: 1. Lack of a statement of decision renders the court's order void; 2. Ogawa was prejudiced by the lack of a statement of decision; 3. the Sayegusas' claim regarding property taxes on the Sayegusa property was barred; 4. the court's finding that Ogawa's opposition lacked reasonable cause, resulting in the award of attorney fees, was unsupported by evidence; and 5. the case should be remanded for a statement of decision. We consider each of these contentions, but address Ogawa's three arguments about a statement of decision in a single section.

A surcharge order against a trustee is typically reviewed under an abuse of discretion standard. (*Estate of Moore* (2015) 240 Cal.App.4th 1101, 1105.) To the extent Ogawa contends the surcharge or attorney fee award could not be legally imposed, we consider the issues de novo. (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 987.) To the extent Ogawa contends there was insufficient evidence supporting the court's findings, we apply a substantial evidence standard of review. (*Ibid*.) Under that standard, we inquire only whether, in light of the record as a whole, there is substantial evidence to support the court's orders. (*Ibid*.) "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)

## A.     Statement of decision

The bulk of Ogawa's briefing is dedicated to his argument that the court was required to issue a statement of decision

following the May 1 ruling, and because the court did not do so, its final order was void.  Ogawa further contends that he was prejudiced by the court's refusal to issue a statement of decision, and that the matter should be remanded for the probate court to issue a statement of decision.  The Sayegusas assert that there was no error, because the court was not required to issue a statement of decision.

Ogawa relies on section 632 and rule 3.1590. Section 632 states that in the context of a court trial, the court "shall issue a statement of decision explaining the factual and legal basis for its decision . . . upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision."  However, if "the trial is concluded within one calendar day . . . the request must be made prior to the submission of the matter for decision."  (§ 632.)

The procedures articulated in rule 3.1590 reflect the requirements of section 632. Rule 3.1590(a) states, "On the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk."  The tentative decision may "[o]rder a party to prepare a statement of decision" (rule 3.1590(c)(4)), or within 10 days of the tentative decision, "any party . . . may request a statement of decision."  (Rule 3.1590(d).)  However, "[w]hen a trial is completed within one day . . . , a request for statement of decision must be made before the matter is submitted for decision."  (Rule 3.1590(n).)

Ogawa acknowledges that the May 1 minute order constituted a "tentative decision" under rule 3.1590(a).  Ogawa asserts that a "Statement of Decision is mandatory," and because

14

both parties requested a statement of decision within 10 days of the May 1 order, the court erred by denying the parties' requests.

As the Sayegusas correctly point out, Ogawa ignores the provisions in both section 632 and rule 3.1590(n) that if a trial lasts less than a day—as it did here—a party is required to request a statement of decision *before* the matter is submitted for decision. The matter was submitted at the one-day hearing on April 20, when the court stated at the end of the hearing, "The matter is deemed submitted today." No party requested a statement of decision before the matter was submitted. Under the plain language of section 632 and rule 3.1590(n), the court was not required to issue a statement of decision.[4]

Ogawa argues that a judgment is "void on its face when the judgment roll shows the Judgment was filed before a required Statement of Decision." Ogawa cites several cases in support of his argument, but none has facts similar to this case. In *Ohio Casualty Insurance Co. v. Northwestern Mutual Insurance Co.* (1971) 17 Cal.App.3d 204 (*Ohio Casualty*), for example, two judgments were entered about a month apart; the first lacked any findings of fact and conclusions of law, even though the plaintiff had timely requested findings under section 632 and the predecessor to rule 3.1590, former rule 232. (*Id.* at pp. 206-207.) The second judgment was filed with findings of fact and conclusions of law. (*Id.* at p. 207.) The Court of Appeal held that a "judgment entered without findings where findings are

---

[4] This case therefore is not similar to *Alafi v. Cohen* (2024) 106 Cal.App.5th 46 (*Alafi*), which Ogawa cites; there, the parties timely requested a statement of decision following a two-week trial.

required is a nullity and is superceded [*sic*] by a subsequent judgment based on findings." (*Ibid*.)

The *Ohio Casualty* court relied on *Supple v. Luckenbach* (1938) 12 Cal.2d 319 (*Supple*), which Ogawa also cites. *Supple* was very similar to *Ohio Casualty*: the court intended to file findings of fact and conclusions of law along with a judgment, failed to do so, and therefore filed a second judgment along with findings of fact and conclusions of law. The Supreme Court held that the first judgment was "a nullity," and the second judgment "was the only valid judgment rendered in said action." (*Id*. at p. 323.)

Neither *Ohio Casualty* nor *Supple* is instructive here. In both of those cases, the courts intended to file findings of fact and conclusions of law in support of the judgments, they erred by failing to do so, then they corrected those errors to reflect the courts' original intentions. Here, by contrast, findings of fact and conclusions of law were neither required nor requested (see § 632 ["upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required"]), and neither party timely requested a statement of decision. The probate court denied the parties' requests and articulated its reasoning for doing so at the August 31, 2023 hearing. Thus, the record makes clear that the court's orders accurately reflected the court's intent. Neither the record nor the case law suggests that the court's order is void.

Ogawa argues that he is prejudiced by the lack of a statement of decision due to the doctrine of implied findings. "Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision."

16

(*Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 48.) Section 632 and section 634 "set forth the means by which to avoid application of these inferences." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Section 634 provides that if "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." Ogawa asserts that he objected to the proposed orders below, so "[t]his court should read CCP §634 to apply when no Statement of Decision is issued."

We decline this invitation. Ogawa had the opportunity to request a statement of decision before the matter was submitted pursuant to section 632 and rule 3.1590(n), and he did not. No authority suggests that we should treat the court's order as a statement of decision after the court specifically declined to issue one.[5]

Moreover, the doctrine of implied findings "is merely a corollary of the general rule that a judgment is presumed to be correct and must be upheld in the absence of an affirmative showing of error. This presumption applies only on a silent record. [Citations.] In contrast, 'When the record clearly demonstrates what the trial court did, we will not presume it did

---

[5] The plaintiffs in *Alafi, supra*, also suggested that a court order should be viewed as a statement of decision. The Court of Appeal rejected this contention, noting that the plaintiffs "make no actual argument in support of that statement, and cite no case law holding that an order of that type can constitute a statement of decision." (*Alafi, supra*, 106 Cal.App.5th at p. 63.)

something different.'" (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.)

Notably, Ogawa does not assert any substantive arguments that the court's findings were unsupported by evidence or authority. Instead, he argues only that he is prevented from making such arguments by the lack of a statement of decision. Because the probate court was not required to issue a statement of decision, Ogawa has failed to demonstrate that the court erred by failing to issue one, that Ogawa was prejudiced as a result, or that remand for a statement of decision is warranted.

## B.     The Sayegusa property taxes

Ogawa asserts for the first time on appeal that the Sayegusas' contentions about the tax burden and penalties on the Sayegusa property could have been arbitrated in the earlier proceeding because the contentions involved the same primary right at issue in the arbitration, and therefore the Sayegusas were barred from asserting the claims in this litigation. This argument has been forfeited.

The Sayegusas correctly point out that Ogawa's argument was not asserted below "'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." . . . Such arguments raised for the first time on appeal are generally deemed forfeited.'" (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.) Moreover, Ogawa's three-sentence argument does not include any citations to the record. Ogawa states that the "prior judgment" included "real property taxes," but he does not cite the prior judgment in the record, nor does he cite to any portion of the record that would allow us to compare the former claims to the latter. An

18

appellant must provide a "factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) Ogawa's argument on this issue has therefore been forfeited.

## C.    Attorney fees

The court awarded the Sayegusas attorney fees based on Probate Code section 17211, subdivision (b), which states in part, "If a beneficiary contests the trustee's account and the court determines that the trustee's opposition to the contest was without reasonable cause and in bad faith, the court may award" the beneficiary reasonable attorney fees. Ogawa contends he had reasonable cause to oppose the Sayegusas' contest, and he did not act in bad faith, so the fee award should be reversed.

Ogawa does not articulate any challenge to the court's bad faith finding, which would be reviewed under a substantial evidence standard. (*Powell v. Tagami* (2018) 26 Cal.App.5th 219, 234 (*Powell*); *Diaz-Barba v. Superior Court* (2015) 236 Cal.App.4th 1470, 1484.) Any challenge to the bad faith finding has therefore been forfeited. We turn to Ogawa's challenge to the court's finding that Ogawa opposed the Sayegusas' contest "without reasonable cause."

"Reasonable cause is evaluated under an objective standard of whether any reasonable person would have tenably filed and maintained the objection. [Citation.] If there is no dispute as to what facts were known at the time the contest was initiated or maintained, the existence of reasonable cause is a question of law." (*Powell, supra,* 26 Cal.App.5th at p. 234.) "Any controversy as to what facts were known to the [trustee] at the time the

19

action was initiated presents a question of fact for the trier of fact." (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 927.)

The court awarded attorney fees only for the period following Ogawa's final account on January 5, 2022, because those fees fit the statutory limitation of the "trustee's opposition to the [beneficiaries'] contest" to the trustee's account. Thus, the reasonability of Ogawa's opposition to the Sayegusas' contest must be evaluated from that date forward.[6]

In arguing that his opposition had reasonable cause, Ogawa asserts that the $9,479.33 life insurance funds and the two tax-related amounts of $50,421.29 and $45,184.88 "could have been put before the Arbitrator in the 2018 arbitration but were not." He also contends that he "consulted with tax experts" before paying the property taxes.

However, Ogawa has not opposed the Sayegusas' argument that substantial property tax penalties were incurred due to trust mismanagement. Ogawa admitted below that the trust's payment of taxes on the Meyer property was "a mistake," and he failed to articulate any legal argument supporting his position regarding taxes on the Sayegusa property. Nevertheless, Ogawa opposed the Sayegusas' claims on these issues. In addition, Ogawa asserts no legal argument supporting his receipt of the

---

[6]    Ogawa contends that we should take into consideration that he "prevailed" on certain issues in the Sayegusas' petition, and therefore his opposition could not have been unreasonable. For example, Ogawa asserts that he prevailed on a claim in the Sayegusas' petition that Ogawa failed to properly maintain the Sayegusa property while it was being held by the trust. The Sayegusas did not pursue this claim after Ogawa filed his final accounting in January 2022, so it is not properly considered as part of this reasonability analysis.

life insurance proceeds in 2020. Ogawa therefore has not demonstrated that he had objectively reasonable cause to oppose the Sayegusas' challenge as to these issues.

Regarding Ogawa's December 2018 transfer of $13,303 from a trust account to himself, Ogawa repeats his argument from below that this sum actually belonged to him but it had been erroneously deposited into a trust account, so "[i]t was not unreasonable for Ogawa to correct the error" by reimbursing himself. He then blames the Sayegusas for this result, because they "did not seek authority to act as temporary trustees" after the arbitrator removed Ogawa as trustee. Notably, Ogawa does not provide any legal authority suggesting that this transfer was appropriate. Ogawa makes a similar argument with respect to the $3,425 accountant fees paid in 2018, 2019, and 2020: he asserts that he was still "acting trustee of the Goo Living Trust, obligated to file tax returns and pay reasonable accountancy fees," so it was "not unreasonable to pay these reasonable amounts."

Ogawa's contest was objectively unreasonable. The arbitrator and court ordered Ogawa in October 2018 to be removed as trustee and to bear his own costs going forward. Even though the order was stayed on appeal, Ogawa thereafter continued to use and transfer trust funds as he saw fit without seeking any sort of authority or oversight—including transferring a significant sum from the trust to himself. Ogawa's continued insistence that he maintained this authority despite the arbitration and court order was objectively unreasonable.

Thus, Ogawa has not demonstrated that he opposed the Sayegusas' contest with objectively reasonable cause. We

21

therefore find no error in the court's award of attorney fees to the Sayegusas.

## DISPOSITION

The probate court's orders of November 21, 2023 and January 2, 2024 are affirmed. The Sayegusas are entitled to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


ZUKIN, P. J.


MORI, J.